STATE of Missouri, Plaintiff–
Respondent,

v.

Edwin GONZALEZ, Defendant–
Appellant.

No. 25152.

Missouri Court of Appeals,
Southern District,
Division Two.

June 30, 2003.

Nancy A. McKerrow, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Sara L. Trower, Office of the Attorney General, Jefferson City, for respondent.

KENNETH W. SHRUM, Judge.

Edwin Gonzalez ("Defendant") appeals his conviction for possession with the intent to distribute a controlled substance in violation of § 195.211, RSMo (2000).[1] After a jury trial, the trial court sentenced Defendant to five years' imprisonment, following the jury's recommendation. Defendant alleges the conviction and sentence should be overturned because there was insufficient evidence to support a finding of guilt. We disagree. We affirm.

Because Defendant challenges the sufficiency of the evidence, we accept as true all the evidence favorable to the State, including all favorable inferences drawn from the evidence, and disregard all evidence and inferences to the contrary. *State v. Skillicorn,* 944 S.W.2d 877, 894[33] (Mo.banc 1997). On March 15, 2001, Officer Stacy Parton of the Springfield, Missouri, police department began his shift at 6:00 p.m. by conducting surveillance on a duplex located at 2001 East Battlefield. During this surveillance, Officer Parton witnessed "a large number of persons going in and out of the apartment." At approximately 1:20 a.m., Officer Parton and his partner, Officer Schwenn, stopped a vehicle, loaded with four individuals that left the duplex, for running a stop sign. The driver spoke briefly to Officer Schwenn and pointed to two Ziploc-type baggies of marijuana. After the occupants were arrested, one passenger informed Officer Parton that they had earlier been smoking marijuana at the duplex.

Acting upon this information, at approximately 2:00 a.m., officers Parton, Schwenn, and two other policemen (Holt and Holle) arrived at the duplex to investigate. The officers were greeted at the door and invited into the home by Jeremy Atkinson. Parton stated, "As soon as the door was opened, I noticed a strong odor of marijuana." The officers conducted a protective sweep of the duplex and found several other individuals throughout the residence. Defendant was located in the southwest bedroom along with his girlfriend, Chara York. The police asked for consent to search, but were denied by the lessees, Atkinson and John Brown. Defendant, however, consented to a search of his room, i.e., the southwest bedroom. A warrant was later obtained, and a search of the duplex was conducted.

In the southeast bedroom (Brown's room), the police found 109 grams of marijuana, notes evidencing prior sales of marijuana, cash, and drug paraphernalia. In the southwest bedroom (Defendant's room), the police found "a small plastic bag containing marijuana roaches" in a small "hutch."[2] Another bag of marijuana was found under a nightstand next to the bed. In Defendant's closet, the police found 159 grams of marijuana in a bag on the top shelf. Some of the marijuana in Defendant's room was individually wrapped as ounces in Ziploc-type bags similar to those seized from the car stopped for running a stop sign, i.e., cheaper sandwich bags without a "zipper" or "Ziplock lock." Men's and women's clothing was found both in the closet and throughout the room. On the dresser, a summons for Defendant was found, as was a similar one for York, from Illinois dated March 12, 2001. Personal

---

1. All statutory references are to RSMo (2000), unless otherwise indicated.

2. "Roaches" were described as "the remains of a marijuana cigarette ... like a cigarette butt" that are broken down and used to "make another larger marijuana cigarette."

items, such as cologne and makeup, were also on top of the dresser.

In the basement, the police found a scale with marijuana residue on it. Behind the scale, baggies were discovered which were the same type as those found in Defendant's closet. Drug paraphernalia and a "marijuana grow operation" were likewise located in the basement. Part of this operation were several marijuana plants and a box fan that was "almost an exact copy" of a fan found in Defendant's closet.

Defendant was ultimately charged with possession of a controlled substance with the intent to distribute in violation of section 195.211. After all evidence was adduced, the jury was instructed upon an accomplice liability theory. It found Defendant guilty. This appeal followed.

■■■ Because sufficiency of the evidence is the only question here, our review is limited to deciding if there was sufficient evidence from which a reasonable juror might have found Defendant guilty beyond a reasonable doubt. *State v. Dulany,* 781 S.W.2d 52, 55[3] (Mo.banc 1989). We are to *accept all of the evidence favorable to the State,* including favorable inferences drawn from the evidence, and *disregard all evidence and inferences to the contrary.* *Id.* at 55[2]. An inference is a logical and reasonable conclusion of fact not presented by direct evidence, but which via logic and reason, the jury may conclude exists from the established facts. *State v. Hyde,* 682 S.W.2d 103, 106[8] (Mo. App.1984).

■■■ To sustain the conviction, the State was required to prove (1) conscious and intentional possession of the controlled substance, either actual or constructive; (2) awareness of the presence and nature

of the substance; and (3) intent to distribute it.[3] *State v. May,* 71 S.W.3d 177, 184 (Mo.App.2002); *State v. Mizanskey,* 901 S.W.2d 95, 98 (Mo.App.1995). Possession and knowledge may, and is often, shown by circumstantial evidence. *State v. Kerns,* 85 S.W.3d 73, 76[2] (Mo.App.2002). When actual possession is not present, as Defendant argues, the State must prove constructive possession and show other facts that buttress the inference of possession. *State v. Bristol,* 98 S.W.3d 107, 111 (Mo.App.2003); *State v. Sours,* 946 S.W.2d 747, 752[15] (Mo.App.1997).

■■■ "Constructive possession will suffice to support a conviction when other facts support an inference of defendant's knowledge of the presence of the substance." *May,* 71 S.W.3d at 184. At a minimum, constructive possession requires evidence that Defendant had access to and control over the premises where the drugs were found. *Bristol,* 98 S.W.3d at 111. In cases of joint control of areas, the State must adduce " 'further evidence or admission connecting the defendant with the illegal drugs.' " *State v. Wiley,* 522 S.W.2d 281, 292 (Mo.banc 1975) (citation omitted); *May,* 71 S.W.3d at 184.

Such additional evidence includes the following: (1) easy accessibility to the drugs whether others have the same accessibility or not, *State v. Keller,* 870 S.W.2d 255, 260[11] (Mo.App.1994), *State v. Kerfoot,* 675 S.W.2d 658, 662 (Mo.App.1984), *State v. Zimpher,* 552 S.W.2d 345, 349–50 (Mo.App.1977); (2) large quantities of drugs on the premises, *State v. Keeper,* 787 S.W.2d 887, 890[6] (Mo.App.1990), *State v. Stewart,* 542 S.W.2d 533, 538 (Mo. App.1976); (3) strong odor of marijuana, *State v. Fuente,* 871 S.W.2d 438, 442 (Mo.

---

**3.** The jury instruction required all of these elements to be found committed by Defendant solely or in conjunction with other persons.

banc 1994), *State v. Purlee*, 839 S.W.2d 584, 588 (Mo.banc 1992); (4) commingling of personal property with drugs, *State v. Foulks*, 72 S.W.3d 322, 326 (Mo.App.2002); and (5) conduct and statements by the defendant, *Kerns*, 85 S.W.3d at 77. We must consider the totality of the circumstances in determining whether sufficient additional incriminating circumstances have been proven. *May*, 71 S.W.3d at 184[20].

Here, the record amply supports Defendant's conviction for possession with the intent to distribute marijuana. Defendant was found in a duplex where the marijuana odor was so strong that an officer noticed the smell as soon as the door was opened. Likewise, Defendant appeared to have been smoking marijuana before the officers arrived. It was obvious to anyone present in the house that not only was an illegal drug present in the home, but that a marijuana *production and distribution operation* was being conducted from within the home. This was shown by (1) Brown's notes and cash, (2) the "lab" in the basement, (3) "large number of persons going in and out of the apartment," (4) the individuals apprehended with marijuana packaged similarly to that found in the house, and (5) two officers' testimony that a drug distribution operation was being conducted therein.

*Moreover, in Defendant's room,* 159 grams of marijuana were found in his clos-et.[4] Marijuana was found in two other places in his room. In addition, it was reasonable for the jury to infer that his clothes were found with the marijuana.[5] Also in his closet, the police found a fan identical to the one utilized in the marijuana production operation located in the basement. Moreover, some of the marijuana found in his room was packaged in baggies similar to that found in the basement and in the car stopped by the police. The only evidence detracting from this was Defendant's offer for the police to search his room (*after* the police were in the process of obtaining a search warrant), and the summons from Illinois listing a Chicago address for him (which *only* indicated he may not have been in Missouri for a substantial period of time). As such, the question of Defendant's possession and knowledge was for the jury. This question was answered adversely to him.

Based on the totality of the circumstances, including four of the five aforementioned instances of "further evidence," we conclude the verdict was supported by substantial evidence indicating that Defendant consciously and intentionally possessed the marijuana, and he knew of its presence and illegal nature. Likewise, the third element, i.e., intent to distribute, was supported by sufficient evidence. The sheer quantity of the marijuana in his room and the baggies used to package a portion thereof were sufficient to sustain

---

**4.** The Defendant appears to argue that he did not admit the southwest bedroom belonged to him. He premises this claim upon the fact that Parton admitted that in his report he did not directly quote the exact words Defendant used. We reject this argument. Parton unequivocally testified that "[a]ccording to my report, I have in there that we searched *his* room." (Emphasis supplied.)

**5.** Although no direct evidence was presented to show that the men's clothing found in the southwest bedroom belonged to Defendant, the established facts are: (a) Defendant ad-mitted it was his bedroom; (b) when officers arrived, he was in that room with his girlfriend, Chara York; (c) both men's and women's clothing were in the room; and (d) in the room, there was a suitcase and travel or makeup bag, as well as traffic tickets from the Chicago area issued to Defendant and York just days before this incident. From this direct evidence, via logic and reason, the jury could have concluded that the marijuana was commingled with Defendant's clothes brought with him from Illinois.

the conviction and sentence per that element. *See, e.g., State v. Fairow,* 991 S.W.2d 712, 714[3] (Mo.App.1999); *State v. Salyer,* 884 S.W.2d 354, 357 (Mo.App. 1994). Point denied.[6]

The judgment of conviction and sentence is affirmed.

PARRISH, J., and RAHMEYER, C.J., concur.

---

**6.** In sustaining the conviction and sentence, we do not ignore the cases relied upon by Defendant. Three of the cases are distinguishable in that, here, there was evidence that drugs were found in the *accused's room.* *See State v. Withrow,* 8 S.W.3d 75, 80–81 (Mo.banc 1999) (accused was only a frequent visitor to drug producing location); *State v. Barber,* 635 S.W.2d 342, 344 (Mo.1982) (no evidence establishing defendant had regular use of bedroom or house); and *State v. Morris,* 41 S.W.3d 494, 498 (Mo.App.2000) (no evidence that accused as a visitor to home had regular access to premises or room where drugs were located). The fourth and final case relied upon by Defendant is *State v. Johnson,* 81 S.W.3d 212 (Mo.App.2002). There, the evidence, which showed the accused's nervousness and large quantities of drugs hidden in the factory voids of a car occupied by three people, was held insufficient. Here, we have Defendant in a house filled with the odor of marijuana, he had been smoking such drug, large quantities were found in his room, the duplex was a distribution center, and his property was commingled with the drugs. Clearly, the case at bar is distinguishable.