**STATE of Missouri, Respondent,**

v.

**Earl RAMSEY, Appellant.**

**No. SD 30846.**

Missouri Court of Appeals,
Southern District,
Division Two.

Feb. 16, 2012.

Craig A. Johnston, Columbia, MO, for Appellant.

Chris Koster, Atty. Gen. and Jessica P. Meredith, Asst. Atty. Gen., Jefferson City, MO, for Respondent.

DANIEL E. SCOTT, Judge.

We consider whether the state proved Earl Ramsey's constructive possession of drugs hidden in a house that he shared with another. On this record, under well-settled law, the answer is "no."

## Background

Ramsey and a woman lived in what was, in effect, a one-bedroom home.[1] Police arrived with a search warrant one day as Ramsey came home. They took his key, entered the empty house, searched, and found 1.31 grams of cocaine in a bedroom wastebasket, hidden under an opaque trash bag liner.

The slender transcript (only 22 pages of trial testimony) of a one-witness bench trial, nearly four years later, offers no other meaningful information about the search.[2]

## Standard of Review

■ Our review for sufficiency of evidence is as in jury-tried cases. *State v. Buford*, 309 S.W.3d 350, 354 (Mo.App. 2010). We accept all evidence and reasonable inferences favorable to the state and disregard all those to the contrary. However, we cannot supply missing evidence or give the state the benefit of unreasonable, speculative, or forced inferences. *State v. Moses*, 265 S.W.3d 863, 865 (Mo.App.2008); *State v. Cushshon*, 218 S.W.3d 587, 589 (Mo.App.2007).

## Constructive Possession/Non–Exclusive Premises

Ramsey did not actually possess the cocaine,[3] so the state had to show, at least circumstantially, his knowing, constructive

---

1. A second "bedroom" had no bed and was used only for storage. There was no indication, an officer testified, that anyone slept on a couch in the living room.

2. The lone trial witness was an officer involved in the search. His testimony, as relevant here, is quoted in the appendix.

3. The state concedes this.

possession thereof. *Moses, supra; Cushshon, supra.* These could be inferred if Ramsey had exclusive use or control of the house, but "where use and control of the premises is not exclusive," additional evidence is needed to link an accused to drugs found there. *State v. Nobles,* 699 S.W.2d 531, 533 (Mo.App.1985).[4]

Despite the state's puzzling argument to the contrary, this is not an exclusive possession case. The state established that two persons lived at the house, then seemingly forgot this,[5] which may explain the paucity of that evidence normally seen in successful prosecutions of this type. At any rate, "the State offered no evidence of exclusive control, but did offer evidence of at least joint control," so it had to adduce "some further evidence" of Ramsey's knowledge of and control over these drugs. *Cushshon,* 218 S.W.3d at 592. An observation from *Moses,* with light editing, might fit this case as well:

> While it was reasonable for the jury to conclude Moses did reside at the trailer given all the evidence, it was not reasonable to infer he had exclusive possession of the premises. Thus, the additional inference that Moses possessed the drugs therein is unwarranted, and the

State must show additional evidence connecting Moses with the contraband in order to constructively prove possession.

265 S.W.3d at 866 (internal citation omitted).

### Additional or Further Evidence

■ Non-exclusive examples of "additional" or "further" evidence have included paraphernalia found on a defendant, flight from police or other acts suggesting consciousness of guilt, drugs commingled with a defendant's personal effects, strong drug odor on premises, a defendant's proximity to contraband, drugs in plain view, or a defendant's incriminating statements. *See, e.g., Michaels v. State,* 346 S.W.3d 404, 410 (Mo.App.2011); *State v. Richardson,* 296 S.W.3d 21, 24–25 (Mo.App.2009); *State v. Power,* 281 S.W.3d 843, 848 (Mo. App.2009); *State v. Wurtzberger,* 265 S.W.3d 329, 337 (Mo.App.2008). The state proved none of these, but claims that two other matters tie Ramsey to these drugs.

One involves Ramsey's alleged cocaine sale to a confidential informant. At trial, however, the state declined to offer this hearsay for its truth.[6] Since it was not

---

4. This court also has cited this established rule, which is not in dispute. *See, e.g., State v. Janson,* 964 S.W.2d 552, 554 (Mo.App.1998). The exclusive/non-exclusive dichotomy dates back to *State v. Funk,* 490 S.W.2d 354 (Mo. App.1973), which surveyed cases nationwide, due to scant Missouri authority at that time, and followed what then was a majority view and now is the law of our state.

5. The defense argued for judgment of acquittal after the state's case:

> [DEFENSE COUNSEL]: First of all, Judge, this is a constructive possession case in that there were two occupants of this house and—
> [PROSECUTOR]: Judge, I'm going to object to that because I don't know that there was any evidence that there were two occupants in this house.

[DEFENSE COUNSEL]: Well, the officer testified that Deborah Watts lived there.
THE COURT: He did testify to that.
[PROSECUTOR]: Okay.
THE COURT: They both lived there; that's what he said. Go ahead.

6. This colloquy followed a defense objection to such hearsay "being considered as substantive evidence":

> [PROSECUTOR]: We're offering it to explain what he did next and why.
> THE COURT: It's not offered for the truth of the matter—
> [PROSECUTOR]: No.
> THE COURT:—is that what you're telling me? All right. With that condition, objection's overruled.

offered or admitted as substantive evidence, the state cannot now treat or rely on it as such.

Also, the state claims Ramsey had "routine access" to the drugs because he slept in the bedroom.[7] This is not persuasive where the state's witness proved that a man and woman shared a house, with one bedroom, and it looked like no one slept elsewhere. That Ramsey slept in the only bedroom does not reasonably suggest, on this record, that his female cohabitant did not, or that either enjoyed exclusive or even superior control of the room, or to whom the hidden drugs belonged. We reiterate the state's failure—in stark contrast to reported cases affirming such convictions—to show these drugs were visible, or were found among or near Ramsey's belongings, or that clothes and the like suggested this was only "his" room, etc. This failure to develop details linking Ramsey to these drugs aligns this case with *Moses, Cushshon, Janson, Nobles, Funk*, and others[8] where constructive possession was not proved and consigns it to a similar fate.

### Conclusion

Ramsey's well-taken, dispositive, first point moots his remaining claim. As the state had an opportunity to fully develop its case, we do not remand for a new trial. *See Janson*, 964 S.W.2d at 555. We reverse and remand with instructions that the trial court enter a judgment of acquittal and order Ramsey discharged.

BARNEY and BATES, JJ., concur.

### *APPENDIX*

The state's sole witness testified as follows regarding the search:

Q.   If you could, describe the floor plan of this residence. When you walk in the front door, what room are you entering?

A.   The living room.

Q.   And then how many bedrooms are there?

A.   Two.

Q.   Were both of those bedrooms being used as bedrooms?

A.   No, ma'am.

Q.   Can you describe which one was being used as a bedroom?

A.   The room on the northeast corner of the house had a bed in it and was a normal bedroom. The room on the northwest corner of the house had basically a storage room, had just stuff piled up in it.

Q.   But there was no bed in that room?

A.   No, ma'am.

Q.   Where did you begin the search?

A.   Initially right in the living room as we walked through. Just did a

---

7.   The state cites *State v. Gonzalez*, 108 S.W.3d 209, 211 (Mo.App.2003), in urging that non-exclusive accessibility to drugs can support a constructive possession case. Accessibility may be relevant, but *Moses*, 265 S.W.3d at 866, shows how it can fall far short of proving constructive possession. Indeed, *Gonzalez* and its cited cases had other facts linking those defendants to the drugs. *See Gonzalez*, 108 S.W.3d at 211–12 (strong marijuana odor and other circumstances); *State v. Keller*, 870 S.W.2d 255, 260 (Mo.App.1994) (defendant's presence, items in plain view or easily obtainable); *State v. Kerfoot*, 675 S.W.2d 658, 662

(Mo.App.1984) (marijuana plainly observable in field farmed by defendant and in sheds near his equipment); *State v. Zimpher*, 552 S.W.2d 345, 349 (Mo.App.1977) (drugs on defendant's bed stand and in drawers with his belongings).

8.   Likewise, *e.g., State v. Tomes*, 329 S.W.3d 400 (Mo.App.2010); *State v. Smith*, 33 S.W.3d 648 (Mo.App.2000); *State v. West*, 21 S.W.3d 59 (Mo.App.2000); *State v. Condict*, 952 S.W.2d 784 (Mo.App.1997).

walk through the whole house to see what was out in plain view, then went directly in the bedroom.

Q. In the bedroom, what was found?

A. In the trash—there was a small trash can. Underneath the liner of it was a baggie containing six what we believed at the time to be crack cocaine.

Q. The trash can, can you describe for the Court approximately how tall?

A. A foot, foot and a half—probably a foot, foot and a half.

Q. What was inside the trash can?

A. A trash bag liner.

Q. And the baggie that you found, was it inside the trash bag liner or underneath it?

A. Underneath the liner.

Q. And then the baggie that you found, was it just one baggie?

A. It contained—it was one baggie that contained several more individually wrapped. Each piece of crack cocaine was individually wrapped inside the one larger bag.

Q. And the baggies that they were in, were they opaque or could you see?

A. You could see through them.

Q. And based on your training and experience, at that point in time what did you think possibly you had?

A. I believed we had crack cocaine that was packaged to be distributed.

The witness also testified that nothing else was found in the bedroom and recalled that the trash bag liner atop the cocaine "wasn't see-through."