

# Missouri Court of Appeals

## Southern District

### Division One

STATE OF MISSOURI, )
)
          Respondent, )
)
   vs. ) No. SD33054
) Filed: January 28, 2015
KENNY DEAN KOCH, )
)
          Appellant. )

### APPEAL FROM THE CIRCUIT COURT OF BUTLER COUNTY

Honorable Michael M. Pritchett, Circuit Judge

### REVERSED AND REMANDED WITH DIRECTIONS

A jury convicted Kenny Dean Koch ("Koch") of the class D felony of possession of methamphetamine-related drug paraphernalia with the intent to use, in violation of section 195.233.[1] Koch was sentenced, as a prior and persistent offender, to seven years in the Missouri Department of Corrections, with credit being given for all time served. In Koch's single point, he challenges the sufficiency of the evidence to support his conviction. Finding merit to Koch's claim, we reverse the judgment and remand with directions.

---

[1] All references to statutes are to RSMo 2000, unless otherwise indicated.

## Facts and Procedural Background

We review the evidence in the light most favorable to the jury's verdict, rejecting all contrary evidence and inferences. *See* **State v. Newberry**, 157 S.W.3d 387, 390 (Mo.App. S.D. 2005).

The evidence adduced at trial was that on April 11, 2012, Koch, and another man, Larry Rushing ("Rushing"), arrived at Michelle Swihart's ("Swihart") mobile home around 6:30 a.m. Swihart had known Koch since 2007, but had not seen him for a long time. Both men stayed until about 10:00 a.m. Koch returned later that afternoon with Jamie Dent ("Dent") and asked Swihart to do some laundry that he had brought in a backpack. Swihart agreed, and Dent and Koch remained at the residence while Swihart did the laundry. However, Swihart made Dent and Koch leave around 4:30 p.m. because Koch discharged a firearm outside around Swihart's children.

Sometime after 10:00 p.m., Swihart testified she was in bed with her children, in the far end of her mobile home, when she awoke hearing voices outside her bedroom window. She identified the voices as being that of Rushing and another man, Joey[2] Kellis ("Kellis"). From the conversation, she believed she was about to be robbed and called 9-1-1. Swihart told the dispatcher that she was alone in her mobile home with her three children and "was being robbed."

At 1:30 a.m. on April 12, 2012, Ripley County sheriff's deputies, Jesse Drumm ("Deputy Drumm") and Jeremy Walter ("Deputy Walter") were dispatched to Swihart's mobile home on suspicion of an armed burglary in progress. They arrived approximately ten minutes after

---

[2] Joey Kellis was sometimes referred to as "Kelly" Kellis in the record.

receiving the call from dispatch. Upon arrival, Deputy Walter observed through the front window a man standing inside who then turned and ran toward the other end of the mobile home.

Deputy Drumm opened the front door, identified himself, and entered the residence with his gun drawn. He moved left to the kitchen area where he "staged" himself behind the refrigerator and looking down the hallway, began ordering people to come out; the living room was to his right. Deputy Drumm repeated his order to come out at least three times before Swihart came out of the back bedroom with a young child. Swihart told the officers there were three men and one woman still in the home with two firearms, and they were in the back room with her other children. Swihart appeared to be under the influence of drugs. Deputy Walter took Swihart and the child to his patrol car.

Upon re-entering the Swihart residence, Deputy Walter saw a "one[-]pot meth lab" ("meth lab") in the living room and so advised Deputy Drumm. The meth lab consisted of chemicals mixed in a twenty-ounce Mountain Dew bottle. Deputy Walter then called for assistance at which time Sergeant Mike Barton ("Sgt. Barton"); Trooper Brian Arnold ("Trooper Arnold"), a narcotics investigator with the Division of Drug and Crime Control of the Missouri State Highway Patrol; and several other law enforcement officers responded to the scene.

Upon arrival, Sgt. Barton announced his presence and Dent came out holding Swihart's nine-month-old child. Eventually, the remaining occupants of the residence were removed: Swihart's third child, Rushing, and Koch—who was the last to come out. Before coming out, Koch was seen by an officer, looking through a back door, standing in the bathtub. The bathroom was located between two bedrooms toward the back of the mobile home and across from a small hallway leading to the back door. Koch appeared to be under the influence of methamphetamines or heavy narcotics.

3

Swihart consented to a search of her residence and Trooper Arnold, who had been called to assist with the meth lab, entered Swihart's home. Trooper Arnold observed in the living room the Mountain Dew bottle and a black duffle bag containing numerous items of drug paraphernalia, all of which used to manufacture methamphetamine. The Mountain Dew bottle had ingredients in it for making methamphetamine, and Trooper Arnold recognized it as a meth lab.

Trooper Arnold also found a black backpack in the "middle bedroom" of the mobile home along with firearms and substances that later tested positive for methamphetamine; the backpack also contained several items used to make methamphetamine.

Arrests were made and Koch was originally charged in Ripley County in a seven-count information. Venue was changed to Butler County, and Koch proceeded to jury trial on only three counts: attempt to manufacture a controlled substance (Count 1), in violation of section 195.211; possession of methamphetamine-related drug paraphernalia with intent to use it to produce methamphetamine (Count 2), in violation of section 195.233; and unlawful possession of a firearm (Count 3), in violation of section 571.070.[3] Specifically, Count 2 charged that on April 12, 2012, Koch "possessed a one[-]pot meth lab, which was drug paraphernalia, knowing it was drug paraphernalia, with intent to use it to produce methamphetamine, a controlled substance."

A jury trial was held on August 1, 2013. Koch did not testify, but Swihart, Dent, Officer Drumm, Trooper Arnold, and several other law enforcement officers did.

---

[3] These charges and counts do not correspond to those set forth in the Amended Information and Judgment. In the Amended Information and Judgment, Count 2 is designated as "Count 5" and Count 3 is designated as "Count 6." The numbering was changed by the State for the purposes of trial "to make things logical and orderly" as four of the original counts had been dismissed. The verdicts for each count correspond to the renumbering.

4

Koch filed motions for judgment of acquittal both at the close of the State's evidence and at the close of all the evidence—the trial court overruled both motions.

The jury found Koch not guilty of Counts 1 and 3, but guilty of Count 2, "Possession of Methamphetamine Related Drug paraphernalia" (the one-pot meth lab) with intent to use to produce methamphetamine. Because of Koch's status as a prior and persistent offender, the trial court sentenced Koch and sentenced him to a term of seven years in the Missouri Department of Corrections with credit being given for all time served. This appeal followed.

In his sole point, Koch contends the trial court erred in overruling his motion for judgment of acquittal at the close of all the evidence and entering judgment on the guilty verdict, because there was insufficient evidence to establish beyond a reasonable doubt that he possessed the one-pot meth lab.

The issue for our review is whether there was sufficient evidence that Koch possessed the one-pot meth lab to support his conviction.

## Standard of Review

In reviewing a challenge to the sufficiency of the evidence, this Court must determine whether sufficient evidence permits a reasonable juror to find guilt beyond a reasonable doubt. *State v. Belton*, 153 S.W.3d 307, 309 (Mo. banc 2005).

> This inquiry does not require a court to ask itself whether it believes that the evidence at trial established guilt beyond a reasonable doubt. Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

*State v. Bateman*, 318 S.W.3d 681, 687 (Mo. banc 2010) (internal quotations and citations omitted).

5

We accept all evidence and reasonable inferences favorable to the judgment, and disregard contrary evidence and inferences. *State v. Ramsey*, 358 S.W.3d 589, 590 (Mo.App. S.D. 2012). "However, we cannot supply missing evidence or give the state the benefit of unreasonable, speculative, or forced inferences." *Id.*

## Analysis

Koch was convicted of felony possession of methamphetamine-related drug paraphernalia with intent to use to produce methamphetamine. § 195.233. "Possession" is the central issue presented on this appeal.

The State was required to show that Koch "possessed drug paraphernalia, was aware of its presence, and possessed it with intent to use [it] to manufacture a controlled substance." *State v. Mickle*, 164 S.W.3d 33, 47 (Mo.App. W.D. 2005); § 195.010(34).[4] "Possession" does not require *exclusive* control; rather, "'[p]ossession may . . . be sole or joint. If one person alone has possession of a substance[,] possession is sole. If two or more persons share possession of a substance, possession is joint.'" *State v. Watson*, 290 S.W.3d 103, 106 (Mo.App. S.D. 2009) (quoting § 195.010(34)). The fact that persons other than Koch had access to the area where the contraband was found does not preclude a finding of possession. *State v. Keller*, 870 S.W.2d 255, 260 (Mo.App. W.D. 1994).

A person has actual possession of contraband where the contraband is on his person or within easy reach and convenient control. § 195.010(34); *State v. McLane*, 136 S.W.3d 170, 173 (Mo.App. S.D. 2004). The parties agree that Koch did not have actual possession of the one-pot meth lab.

---

[4] References to section 195.010(34) are to RSMo Cum.Supp. 2011.

"Where actual possession is not present, the State carries the burden of proving constructive possession coupled with facts that buttress the inference of possession." *State v. Power*, 281 S.W.3d 843, 848 (Mo.App. E.D. 2009). A person has constructive possession of contraband where that person "has the power and the intention at a given time to exercise dominion or control over the substance either directly or through another person or persons[.]" § 195.010(34). "To demonstrate constructive possession, the State must show at a minimum the defendant had access to and control over the premises where the substance was found." *Power*, 281 S.W.3d at 848.

In the record before us, there was evidence of joint control over the premises where the one-pot meth lab was found. "Where there is evidence of joint control over the area where a controlled substance is found, the State must present additional evidence that connects the defendant to the controlled substance." *Id.* We examine the totality of the circumstances to determine whether sufficient evidence of additional incriminating circumstances has been shown. *Id.* In so doing, "[t]here is . . . no precise formula[.] [W]e look to the facts of each case in determining if the totality of the circumstances supports the finding of possession." *State v. Kerns*, 389 S.W.3d 244, 248 (Mo.App. S.D. 2012).

*Mickle* provides categories of additional incriminating circumstances to consider in the totality of the circumstances sufficient to support possession, including:

> (1) being in close proximity to the item seized; (2) presence of a chemical odor associated with the manufacture of methamphetamine; (3) giving false statements to police; (4) defendant's personal belongings found with the items or substance; (5) routine access to the place where the item is found; and (6) the presence of a gun[.]

164 S.W.3d at 43-44 (internal citations omitted). While we review this case on its own unique facts, *Kerns*, 389 S.W.3d at 248, we nevertheless note that facts from these categories are largely

7

missing here: (1) Koch was not in close proximity to the one-pot meth lab—he was discovered in the bathroom of Swihart's residence, and the one-pot meth lab was discovered in the living room; (2) there was no evidence of a chemical odor associated with the manufacture of methamphetamine in Swihart's residence; (3) there was no evidence that Koch gave false statements to police; (4) Koch's personal belongings were not found commingled with the one-pot meth lab; (5) Koch was at Swihart's premises intermittently over the course of one day and the very early hours of the next morning, he did not own the premises, did not have the right to exclude others from the premises, and he himself was excluded from the premises earlier in the day by Swihart; and (6) a firearm was not discovered in close proximity to the one-pot meth lab.

Under these circumstances, the mere fact that the one-pot meth lab was in plain view in the living room (along with a bag containing methamphetamine ingredients) does not support the inference that Koch *possessed* them.

There was testimony that Koch had ingested methamphetamine or some other heavy narcotic, but there is no evidence to distinguish Koch's consciousness of guilt from ingestion of an illegal drug, distinguished from possible consciousness of guilt connected to possession of the one-pot meth lab. *See **State v. Franco-Amador***, 83 S.W.3d 555, 558-59 (Mo.App. W.D. 2002).

Finally, while two firearms were found in a vent in Swihart's "middle bedroom," there was no evidence connecting Koch to this room. There was no testimony that Koch had been in the bedroom, or had access to it.

Evidence of suspicious circumstances are insufficient to meet the State's burden to adduce additional evidence tying a defendant to contraband in a joint possession case—the State was required to produce evidence which, if believed, probatively furthered the reasonable

8

inference that defendant had *possession* of the one-pot meth lab. *See* ***Ramsey***, 358 S.W.3d at 591-92. That evidence is lacking under the facts of this case.

This conclusion is consistent with other decisions by this Court. In ***State v. Politte***, 391 S.W.3d 537, 358 (Mo.App. S.D. 2013), we concluded the evidence was insufficient to connect defendant to a large quantity of marijuana found in a garage attached to a home, which defendant occupied, even where defendant had routine access to the living room and bedroom of the home where marijuana was found; defendant was in close proximity to paraphernalia and marijuana found on the living room table; and defendant admitted to police that he was aware of drugs on the premises. We concluded:

> The record may indicate [defendant]'s familiarity with drugs and [his roommate]'s illegal activities, and [defendant]'s knowledge that drugs were on the premises, but [this] does not justify an inference that he possessed or controlled the felonious quantities of compressed marijuana. Even if [defendant] had routine access to the living room, the evidence showed many others did as well, and there was no showing that [defendant] used the detached garage.

*Id.* at 540 (internal quotation and citations omitted).

Similarly, in ***Ramsey***, 358 S.W.3d at 591-92, where a man and a woman shared a house and slept in the same bedroom where marijuana was found, and the State failed to offer evidence that "either enjoyed exclusive or even superior control of the room, or to whom the hidden drugs belonged[,]" we found there was insufficient evidence of possession to support defendant's conviction.

In ***State v. Moses***, 265 S.W.3d 863, 865 (Mo.App. E.D. 2008), police found in the kitchen of a mobile home, rocks of cocaine and a pipe that was still warm; in the living room, a bag of marijuana, a box of bullets, and a copper filament; and in a bedroom, a sawed off .22 rifle and some of defendant's personal items in plain view, including mail addressed to him at the address of the mobile home and his identification. Defendant, at the time the officers arrived,

9

fled the scene and escaped. The court there found that this evidence was insufficient to support an inference that defendant possessed the cocaine, suggesting that while the evidence may support the inference that defendant was aware of the cocaine, the evidence did not indicate that defendant exercised dominion or control over the cocaine.

The State argues that it met its burden to produce additional evidence of possession, pointing to the following evidence: (1) the meth lab was in plain view in Swihart's living room, and ingredients used in the production of methamphetamine were found in a duffle bag near the bottle and in a backpack in a back bedroom;[5] (2) Koch was present several times on April 11, 2012, and was present when the meth lab was discovered; (3) when police arrived and ordered the occupants of the home to come out, Koch secreted himself in the bathroom; (4) at the time police discovered him, Koch appeared to be under the influence of methamphetamines or heavy narcotics.

Using this evidence, the State then argues *State v. Keller*, 870 S.W.2d 255 (Mo.App. W.D. 1994), demonstrates this was sufficient to support Koch's conviction. In *Keller*, contraband was found in a hotel room registered to defendant in defendant's name. There was evidence of only one other person in the hotel room during the relevant time period. There was also specific evidence that the amount of drugs in the room was not typical of that used for personal consumption, but more likely used for distribution. Specifically, the police found approximately 87 grams of cocaine (worth $16,000 on the street); scales; baking soda; gram baggies (commonly used in distribution); and $1,400 in a safety deposit box. When police entered the hotel room, Keller ran to the bathroom area. *Id.* at 257.

---

[5] The State attempts to suggest that a backpack containing contraband found in a "middle bedroom" supports the conclusion that Koch possessed the one-pot meth lab in the living room. However, there is no evidence specifically connecting Koch to this backpack—no one testified that the backpack was Koch's, that Koch knew of the backpack, or that Koch had access to that bedroom. *See Politte*, 391 S.W.3d at 539-40.

*Keller* is not controlling based on the record before us. Here, there was joint control over the area and the contraband was in plain view. However, defendant in *Keller*, had far superior control and dominion over the premises—the hotel was registered to defendant alone (and he likewise had the right to exclude others), and there was evidence of only one other person who was in the room with defendant. Here, the premises in question belonged to Swihart, not Koch. In addition, unlike *Keller*, Koch did not have the ability to exclude others and was apparently excluded himself from the premises by Swihart earlier in the day. Further, there was evidence that numerous individuals had access to Swihart's residence at various times during April 11 and 12, 2012—Swihart, Dent, Rushing, Kellis, and Koch. During this time, Koch was present only intermittently. *See Ramsey*, 358 S.W.3d at 592.

Further, Koch's location in the bathroom, unlike the retreat in *Keller*, is lacking in sufficient evidence. Unlike the defendant in *Keller*, Koch appeared to be high on methamphetamines or some other heavy narcotic. "Flight does not establish a defendant's guilty knowledge *of a particular crime in comparison to other possible charges* and is alone insufficient to support a conviction." *Franco-Amador*, 83 S.W.3d at 558-59 (internal quotation and citation omitted) (emphasis added). The State fails to direct us to evidence supporting the inference that such consciousness of guilt was related to Koch's concurrent or former possession of methamphetamine drug paraphernalia with the intent to use as *distinguished* from consciousness of guilt stemming from mere *knowledge* of the meth lab or drugs, or recent ingestion of an illegal drug. *See Moses*, 265 S.W.3d at 866.

That Koch appeared to be high on methamphetamine or another heavy narcotic does not, in combination with the other facts before us, sufficiently show that Koch possessed and intended to use the methamphetamine *paraphernalia* to manufacture methamphetamine.

11

§ 195.233. This evidence may support the inference that Koch ingested methamphetamine; however, the State was required to prove that Koch possessed the one-pot meth lab with intent to use it to produce methamphetamine.[6]

Under the totality of the circumstances on the record before us, we find there was insufficient evidence to show that Koch possessed the one-pot meth lab with intent to use it to manufacture methamphetamine under section 195.233. The judgment of the trial court is reversed and remanded with instructions to enter a judgment for acquittal of Koch for the charge of unlawful possession of drug paraphernalia with intent to use under section 195.233.

WILLIAM W. FRANCIS, JR., C.J./P.J. - OPINION AUTHOR

JEFFREY W. BATES, J. - Concurs

DANIEL E. SCOTT, J. - Concurs in Separate Opinion

---

[6] The evidence indicates that the one-pot meth lab had been "cooked out," and that it was not clear when the lab had been used. The prosecutor explicitly stated: "We can concede that. We don't know exactly when this bottle was put together. It might have been five days before or it might have been that day. But, it is there." The evidence presented indicates that Koch was only on the premises intermittently on April 11, 2012, and the very early hours of April 12, 2012.

12



# Missouri Court of Appeals

## Southern District

### Division One

STATE OF MISSOURI,                )
                                  )
                    Respondent,   )
                                  )
        vs.                       )      No. SD33054
                                  )
KENNY DEAN KOCH,                  )
                                  )
                    Appellant.    )

## CONCURRING OPINION

Of necessity, "our opinions often cite facts that we cannot consider in deciding if any evidence supports the judgment" because outside readers may need context to understand a case. ***Smith v. Great American Assur. Co.***, 436 S.W.3d 700, 705 (Mo.App. 2014). Even so, we have tunnel vision in checking sufficiency of evidence, considering only what aids the respondent and ignoring all else because "if evidence *does* support the judgment, no amount of counter-proof erases it." ***Id.***

This case so viewed, like others cited in the principal opinion, "presents circumstances that might indicate that the defendant had knowledge of the [one-pot meth lab], but no circumstances that could indicate that the defendant exercised

control over [it]. Evidence of both is required to support a conviction." ***State v. Politte***, 391 S.W.3d 537, 540 (Mo.App. 2013). I concur.

DANIEL E. SCOTT, J. – CONCURRING OPINION AUTHOR