

# Missouri Court of Appeals

### Southern District

### Division One

| | |
|---|---|
| STATE OF MISSOURI, | ) |
| | ) |
| Plaintiff-Respondent, | ) |
| v. | ) No. SD33205 |
| | ) Filed: 3-30-15 |
| ADRIANO RAPHAEL CLARK, SR., | ) |
| | ) |
| Defendant-Appellant. | ) |

### APPEAL FROM THE CIRCUIT COURT OF WEBSTER COUNTY

### Honorable Donald G. Cheever, Associate Circuit Judge

## **AFFIRMED**

Adriano Clark (Defendant) was charged as a prior and persistent drug offender with the class C felony of possession of methamphetamine. *See* § 195.202.[1] After a bench trial, Defendant was found guilty of that offense and sentenced to serve 10 years in prison.[2] Defendant's sole point on appeal is that the evidence was insufficient to support his conviction. We disagree and affirm.

---

[1] All references to statutes are to RSMo. Cum. Supp. (2012) unless otherwise specified.

[2] Because the trial court also found beyond a reasonable doubt that Defendant was a prior and persistent drug offender, his conviction was punishable as a class A felony. *See* §§ 195.275, 195.285 RSMo (2000); § 558.011.

On appeal, we view the evidence and all reasonable inferences derived therefrom in the light most favorable to the verdict; all contrary evidence and inferences are disregarded. *State v. Belton*, 153 S.W.3d 307, 309 (Mo. banc 2005). We defer to the fact-finder's "superior position to weigh and value the evidence, determine the witnesses' credibility and resolve any inconsistencies in their testimony." *State v. Lopez-McCurdy*, 266 S.W.3d 874, 876 (Mo. App. 2008). Viewed from this perspective, the following evidence was adduced at trial.

On February 6, 2013, Officer Jeffrey Ford of the Marshfield Police Department drove to a house at 222 North Fulton Street in response to a 911 "hang up" call that had originally been assessed as an assault in progress with somebody in distress. When Officer Ford reached the address, he made contact with a woman named Autumn Dieckmeyer (Dieckmeyer), who appeared to have been assaulted. When Officer Ford asked her if anyone else was at the residence, Dieckmeyer motioned back toward the rear of the house with her head.

Officer Richard Neal then arrived at the scene. Together, the officers investigated the rear of the house, where they found Defendant sitting on a bed in the east bedroom. Defendant was sitting on the west side of the bed next to a nightstand. On the nightstand, the officers saw a black velvet pouch with drawstrings. There was another brown pouch hanging above the nightstand. As the officers entered the room, Defendant stood up and began to approach the foot of the bed. Shortly after entering the bedroom, Officer Ford arrested Defendant and took him to jail.[3] He asked about getting his belongings from the second, west bedroom of the house, where there were "numerous clothes, a toolbox,

---

[3] It is not clear from the record why Defendant was arrested.

things of that nature." He said "everything in that bedroom was his." Defendant had $560 in cash (five $100 and three $20 bills) on him when he was taken into custody.

When Detective Joseph Taylor of the Marshfield Police Department arrived at the scene, he met with Dieckmeyer on the front porch of the residence. She was holding a cell phone in her hand. She identified herself as Defendant's girlfriend and gave her consent to a search of her residence. Several photographs of the rooms inside the house were admitted in evidence.[4] The east bedroom was the residence's master bedroom and main living area. Along the south wall of that bedroom were at least four photographs depicting Defendant and Dieckmeyer together. Next to the nightstand on the west side of the bed where Defendant had been sitting, police found large-sized shoes that appeared to belong to a man. In the nightstand area, Detective Taylor testified that he found a knife box and what he believed to be Defendant's cell phone. Inside the brown pouch that was hanging above the nightstand, the police found: (1) paraphernalia; (2) an electronic scale; (3) a plastic baggie containing 8 grams of methamphetamine; and (4) numerous small, empty plastic baggies. Inside the black pouch that was on top of the nightstand next to the bed, the officers found a substance that was later determined to be methamphetamine. Based upon Detective Taylor's experience, the items found in the east bedroom were being used to sell and distribute methamphetamine.

Defense counsel's motion for judgment of acquittal at the close of all of the evidence was denied. The court found Defendant guilty of possession of a controlled substance, and this appeal followed.

---

[4] Exhibits 5-11, which were photographs of the east bedroom and items found therein, were deposited for our review.

3

Defendant contends the trial court erred by overruling Defendant's motion for judgment of acquittal at the close of all of the evidence. The standard of review for a motion for judgment of acquittal is the same as the standard used for reviewing a challenge to the sufficiency of the evidence. *State v. McQuary*, 173 S.W.3d 663, 666-67 (Mo. App. 2005). We must determine whether a reasonable fact-finder could have found the defendant guilty beyond a reasonable doubt. *State v. Chaney*, 967 S.W.2d 47, 52 (Mo. banc 1998). We accept all evidence favorable to the State as true, draw all inferences in favor of the State, and disregard all inferences to the contrary. *Id*. This Court need not believe that the evidence at trial established guilt beyond a reasonable doubt, but instead must determine whether, after viewing all evidence in a light most favorable to the State, any rational trier of fact could have found each essential element of the crime beyond a reasonable doubt. *Id*.

Defendant contends the evidence is insufficient to support his conviction because the State failed to prove that he knew about the drugs or exercised control over them. Defendant argues the evidence cannot support such a finding because "the drugs were found in closed pouches, and there was no further evidence presented connecting [him] to the drugs." We disagree.

In order to show that a person unlawfully possessed a controlled substance in violation of § 195.202, the State must demonstrate that the person, with knowledge of the presence and nature of the substance, had actual or constructive possession of it. § 195.010(34); *State v. Stover*, 388 S.W.3d 138, 146-47 (Mo. banc 2012). Both knowledge and possession may be proven by circumstantial evidence, which need not be conclusive of guilt nor show the impossibility of innocence. *State v. Purlee*, 839 S.W.2d

4

584, 587 (Mo. banc 1992); *see also* **State v. Goff**, 439 S.W.3d 785, 791 (Mo. App. 2014) (holding that circumstantial evidence is afforded the same weight as direct evidence). When actual possession is not present, the State must show constructive possession by demonstrating, at a minimum, that the defendant had access to and control over the premises on which the controlled substances were found. **Glover v. State**, 225 S.W.3d 425, 428 (Mo. banc 2007); **Purlee**, 839 S.W.2d at 587.

When joint control over an area exists, as it does in this case, the State must produce additional evidence to connect the accused to the controlled substance. **Glover**, 225 S.W.3d at 428. This additional evidence may include routine access to areas where the controlled substance was being kept, the accused being in close proximity to the substance or paraphernalia, and commingling of the substance with the defendant's personal belongings. *See* **State v. Bremenkamp**, 190 S.W.3d 487, 493-94 (Mo. App. 2006). Evidence of a defendant's contemporaneous possession of a large amount of cash in close proximity to drug paraphernalia also is relevant to show knowing and intentional possession. *See* **State v. Mitchell**, 442 S.W.3d 923, 930-31 (Mo. App. 2014).[5] In addition, superior access to contraband accessible by more than one person is an incriminating fact. **State v. Millsap**, 244 S.W.3d 786, 789 (Mo. App. 2008). Whether evidence is sufficient to connect a defendant to a controlled substance will be determined by considering the totality of the circumstances. **Id**. at 788.

---

[5] Defendant argues – citing **State v. Jackson**, 419 S.W.3d 850, 856 (Mo. App. 2014) – that five $100 and three $20 bills found on Defendant's person is not indicative of drug dealing because it is not in small denominations. We disagree. Some of the bills were a small denomination, as was mentioned in **Jackson**. Moreover, the denomination of the bills is simply one fact, among many others, which may be considered by a fact-finder to infer that a large sum of cash found on a defendant's person is indicative of drug dealing.

Here, the State presented sufficient evidence to show Defendant had access and control over the premises where the drugs were found. Because the area was under joint control with Deickmeyer, the State also presented sufficient additional evidence connecting Defendant to the drugs. The evidence showed the following: (1) police were originally called to the residence in response to a call of an assault in progress with somebody in distress and found Dieckmeyer, who appeared to have been assaulted; (2) Dieckmeyer said Defendant was her boyfriend and directed officers to the main bedroom; (3) there were no other people in the house except Defendant; (4) officers noticed photos of Dieckmeyer and Defendant on the south wall of the bedroom; (5) when police entered the east bedroom, Defendant was sitting on the west side of the bed next to the nightstand where the drugs were found; (6) the drugs were within Defendant's easy access and control; (7) men's shoes were located next to the nightstand; (8) a knife box and cell phone believed by Detective Taylor to belong to Defendant were on the nightstand near the drugs; (9) as the officers entered the room, Defendant stood up and began to approach the foot of the bed, away from the drugs; (10) numerous clothes and a toolbox admittedly belonging to Defendant were located in another bedroom; and (11) Defendant had $560 on his person when he was taken into custody. This evidence, and the reasonable inferences derived therefrom, suggests that Defendant and Dieckmeyer were engaged in a relationship and that Defendant was staying at her house, where he had routine access to and control over the premises where the drugs were found. *See **Bremenkamp***, 190 S.W.3d at 493-94; ***Mitchell***, 442 S.W.3d at 930-31. Although Defendant argues the drugs were hidden in pouches and he did not know of the pouches' contents, a reasonable fact-finder could infer Defendant's knowledge and control over the drugs from

6

Defendant's personal belongings (the men's shoes, knife box and cell phone) that were found in close proximity to the nightstand where the drugs were found. *See Glover*, 225 S.W.3d at 428; *Bremenkamp*, 190 S.W.3d at 493-94. In addition, Defendant was actually found sitting next to the drugs, within easy reach and control, indicating that he had superior access to the drugs on the west side of the bed. *See Millsap*, 244 S.W.3d at 789. A reasonable finder of fact also could have found that Defendant's contemporaneous possession of the $560 in cash on his person demonstrated that, together with the other evidence suggesting methamphetamine was being sold and distributed, he knowingly and intentionally possessed the methamphetamine found in the east bedroom. *See State v. Dowell*, 25 S.W.3d 594, 603 (Mo. App. 2000).

Defendant's suggestion that *State v. Ramsey*, 358 S.W.3d 589 (Mo. App. 2012), warrants reversal of the judgment is unpersuasive because of the factual differences in that case. There, police approached Ramsey outside of the house that he shared with a woman. *Id*. at 590. The police "took his key, entered the empty house, searched, and found 1.31 grams of cocaine in a bedroom wastebasket, hidden under an opaque trash bag liner." *Id*. The State failed to develop any additional evidence linking Ramsey to the drugs. *Id*. at 591-92. That is simply not the case here. Defendant was not found outside the house, but inside, sitting on the bed and surrounded by what could reasonably be inferred to be his belongings: large men's shoes, a knife box and cell phone. These personal items were in close proximity to the nightstand where the drugs were found, all within Defendant's easy reach and control. This evidence supports the inference that Defendant had superior access to the drugs found on his side of the bed and, unlike *Ramsey*, constitutes additional evidence linking Defendant to the drugs.

Considering the totality of the circumstances and viewing the evidence in the light most favorable to the verdict, as we must, there was sufficient evidence from which a reasonable fact-finder could have found beyond a reasonable doubt that Defendant possessed the methamphetamine. Accordingly, the trial court did not err in overruling Defendant's motion of acquittal at the close of all the evidence. Defendant's point is denied, and the trial court's judgment is affirmed.

JEFFREY W. BATES, J. – OPINION AUTHOR

DANIEL E. SCOTT, J. – CONCUR

WILLIAM W. FRANCIS, JR., C.J./P.J. – CONCUR