

# Missouri Court of Appeals

## Southern District

## Division Two

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | |
| | ) | |
| Plaintiff-Respondent, | ) | |
| | ) | |
| v. | ) | No. SD33719 |
| | ) | |
| TERISA L. STEPHENS, | ) | **Filed: Feb. 24, 2016** |
| | ) | |
| Defendant-Appellant. | ) | |

### APPEAL FROM THE CIRCUIT COURT OF GREENE COUNTY

Honorable J. Dan Conklin, Circuit Judge

### AFFIRMED

Terisa L. Stephens ("Defendant") appeals her conviction for possession of methamphetamine, *see* section 195.202, RSMo 2000, following a jury trial.[1] Her sole point alleges the trial court erred in overruling her motion for judgment of acquittal at the close of all evidence because there was insufficient evidence that she constructively possessed the methamphetamine located in her jointly-occupied residence. Finding no merit in this claim, we affirm.

### Standard of Review

We review to determine whether the evidence tending to prove guilt and reasonable inferences therefrom, when viewed in the light most favorable to the judgment, were

---

[1] All other statutory references are to RSMo Cum. Supp. 2010. All rule references are to Missouri Court Rules (2015).

sufficient for a reasonable fact-finder to find the essential elements of the crime beyond a reasonable doubt. *State v. Miller*, 372 S.W.3d 455, 463 (Mo. banc 2012). Our recitation of the relevant facts is in accordance with this standard.

## Factual and Procedural Background

On May 5, 2010, Sergeant Jamin Sackman ("Sergeant Sackman"), then a detective with the Greene County Sheriff's Department, was called to a location just north of Willard to conduct a "death investigation." Upon arrival, Sergeant Sackman saw what appeared to be a dead body in the front yard of a small mobile home. Defendant, Larry Jackson ("Jackson"), and Laura Adkins ("Adkins"), the deceased's fiancée, were all at the scene. From his conversations with the three, Sergeant Sackman learned that Defendant had been living with Jackson at the mobile home for approximately the last two months and that Adkins and the deceased did not reside in the mobile home.

As Sergeant Sackman approached the body, he noticed a "strong chemical odor" consistent with methamphetamine production. Sergeant Sackman asked the primary resident, Jackson, for permission to search the mobile home. Jackson agreed, and Sergeant Sackman commenced his search. There were two bedrooms in the mobile home, but only one bed. The bedroom without a bed was used only as a storage room. The only place in the mobile home that appeared to be a sleeping location was the bedroom that contained the bed ("the bedroom").

In a back room that appeared to have been added onto the mobile home ("the office"), Sergeant Sackman found a methamphetamine laboratory in a desk drawer. The lab included three glass jars with biphasic liquids inside. A lab report admitted at trial stated

that the liquid contained methamphetamine. Additional methamphetamine in a small plastic baggie was located on the top shelf of the bedroom closet.

When Sergeant Sackman found the methamphetamine lab in the desk drawer, he notified the Combined Ozarks Multi-Jurisdictional Enforcement Team ("COMET"). Corporal Michael Shook ("Corporal Shook"), a member of COMET, arrived at the mobile home and immediately smelled a "very strong odor that is completely unique to a red phosphorus meth lab." Sergeant Sackman and Corporal Shook each opined that no one could live in the mobile home without smelling the chemical odor. Red phosphorus used to produce methamphetamine is commonly obtained from the strike plates of match books. In addition to the glass jars with biphasic liquids, the office desk drawer also contained match strike plates.

Defendant admitted at trial that she had lived with Jackson for about five weeks prior to getting arrested. Defendant was aware that Jackson made methamphetamine at the mobile home, and the jury could infer from the descriptions by Defendant and Sergeant Sackman that Defendant knew this manufacturing was happening in the office. Defendant removed the strike plates from match books in the dining room for Jackson's use in manufacturing methamphetamine, and she used methamphetamine that Jackson manufactured.

When asked about her knowledge of the items in the office desk drawer, Defendant responded, "I knew that [Jackson] had stuff back there that should have been thrown away, in my opinion 'cause I washed my clothes in that room, so, yeah. And it had a smell to it and I knew -- I knew what was going on, yeah, I did." After her release from jail, Defendant returned to the mobile home and resided there an additional six months. Jackson admitted

3

that he manufactured methamphetamine every day and shared it with Defendant while she was living with him in exchange for her help in removing the strike plates from match books.

Defendant was charged with and convicted of one count of the class B felony of manufacturing of a controlled substance (methamphetamine), *see* section 195.211 (Count I), and one count of the class C felony of possession of a controlled substance (methamphetamine), *see* section 195.202 (Count II). Defendant challenges only her Count II possession conviction.

### Analysis

Defendant's sole point claims the State failed to present sufficient evidence that she had knowledge and constructive possession of the methamphetamine found in the mobile home.[2]

> Proof of a defendant's knowledge often is supplied by circumstantial evidence of the acts and conduct of the defendant that permit an inference that he or she knew of the existence of the contraband. Proof of constructive possession requires, at a minimum, evidence that defendant had access to and control over the premises where the substance was found. Exclusive control over the premises raises an inference of possession and control. However, when there is joint control over the premises

---

[2] The State's amended information alleged that Defendant, "acting with another, possessed methamphetamine, a controlled substance, knowing of its presence and nature." Defendant also alleges in her point that the State should not have been allowed to "change the basis of the charge, during closing argument, from the one-gram bag of methamphetamine found in the closet to the methamphetamine found in the bi-layer liquids of the stored meth lab found in a different room." No such objection was made at trial. As a result, we could review the claim only for plain error under Rule 30.20. Defendant's argument also contends, based on the State's closing argument, that plain error occurred because "it is unclear whether the jury relied on the methamphetamine found in [Jackson]'s closet or the methamphetamine found in the liquid in the jars of the stored meth lab to convict [Defendant,]" citing **State v. Taylor**, 216 S.W.3d 187, 195 (Mo. App. E.D. 2007) (plain error resulted from State's argument that possession occurred based upon three instances and there was only "sufficient evidence, albeit minimal," supporting one instance of possession) (*abrogated on other grounds by* **State v. Moore**, 352 S.W.3d 392, 400 (Mo. App. E.D. 2011)). This second claim is not preserved for review because it was not included in the point. *See* **State v. Nibarger**, 304 S.W.3d 199, 205 n.5 (Mo. App. W.D. 2009). Further, Defendant offers no analysis of **Taylor** in the context of her case, and she fails to present any other argument that would be necessary to support a claim of plain error. Plain error claims made in regard to closing arguments are generally denied without explanation, **State v. Calhoun**, 259 S.W.3d 53, 59 (Mo. App. W.D. 2008), and we do so here.

4

where the drugs are discovered, some further evidence or admission must connect the accused with the illegal drugs.[3]

*State v. Stover*, 388 S.W.3d 138, 147 (Mo. banc 2012) (internal quotations and citations omitted). *See also* 195.010(34) ("constructive possession" occurs when a person has "the power and the intention at a given time to exercise dominion or control over the substance either directly or through another person" and "[i]f two or more persons share possession of a substance, possession is joint").

"[F]urther evidence" connecting the accused to a controlled substance may take many different forms, including, but not limited to,

> routine or superior access to areas where the controlled substance is kept, the presence of large quantities of the controlled substance, an admission by the accused, the accused being in close proximity to the controlled substance in plain view of law enforcement officers, commingling of the substance with the accused's personal belongings, or flight of the accused upon realizing the presence of law enforcement officers.

*State v. Kerns*, 389 S.W.3d 244, 247 (Mo. App. S.D. 2012). Constructive possession is not determined by a "precise formula," however, and we look to the totality of the circumstances to determine whether the State has provided the required additional incriminating evidence. *Id.* at 248. *See also State v. Purlee*, 839 S.W.2d 584, 589 (Mo. banc 1992) ("[a]n acquittal verdict would have been inconsistent with the totality of facts reasonably considered, excepting only [the defendant]'s denials").

Here, there was sufficient evidence that Defendant knew of and shared constructive possession of the methamphetamine in the office. She knew "what was going on" with Jackson making methamphetamine in the office. Defendant had routine access and control over the office as she had lived in the small mobile home for at least five weeks, she regularly washed her clothes in the office, and the room "had a smell to it [that she] knew[.]"

---

[3] The parties agree that the mobile home was occupied by, at a minimum, Defendant and Jackson.

5

*Cf. State v. McCall*, 412 S.W.3d 370, 374 (Mo. App. E.D. 2013) (finding access and control over controlled substance found in common areas and bedrooms of a jointly occupied home); *State v. Carl*, 389 S.W.3d 276, 285-86 (Mo. App. W.D. 2013) (viewing evidence that methamphetamine was found in two routinely accessed places in the defendant's jointly occupied home as further evidencing "constructive possession and/or . . . shared constructive possession of the methamphetamine"); and *State v. Buford*, 907 S.W.2d 316, 318 (Mo. App. E.D. 1995) (finding possession, "or at least shared possession[,] of drug paraphernalia" found in common areas of an apartment co-leased by the defendant).

In addition to Defendant's routine access to the office, and her knowledge that methamphetamine was being manufactured there, she also actively participated in the manufacturing process by removing the strike plates from match books. *Cf. Carl*, 389 S.W.3d at 286 (the defendant's actions in manufacturing methamphetamine were viewed as further evidence supporting the reasonable inference that he possessed the methamphetamine found in his home). Further, Defendant's admitted use of methamphetamine produced at the residence is an additional factor supporting her constructive possession of the methamphetamine in the office. *Cf. State v. Riley*, 440 S.W.3d 561, 565 (Mo. App. E.D. 2014) (holding a defendant's admission to use of the drugs connected with those that formed the basis of a possession charge provided an additional factor linking the defendant to the controlled substance). In so holding, *Riley* distinguished *State v. May*, 71 S.W.3d 177, 184 (Mo. App. W.D. 2002), a case in which the defendant admitted only to prior drug use in general. 440 S.W.3d at 565. Here, Defendant's admitted use of methamphetamine manufactured at her residence makes this case more like *Riley* than like *May*.

6

Under the totality of the circumstances present here, a reasonable juror could find that Defendant constructively possessed the methamphetamine located in the office of the mobile home. Defendant's point is denied, and her Count II conviction for possession of a controlled substance is affirmed.[4]

DON E. BURRELL, P.J. – OPINION AUTHOR

NANCY STEFFEN RAHMEYER, J. – CONCURS

GARY W. LYNCH, J. - CONCURS

---

[4] Defendant's brief summarizes multiple cases holding that insufficient evidence existed to establish a defendant's constructive possession of a controlled substance on jointly-occupied property, including *State v. Politte*, 391 S.W.3d 537, 538 (Mo. App. S.D. 2013); *State v. Ramsey*, 358 S.W.3d 589, 590 (Mo. App. S.D. 2012); *State v. Cushshon*, 218 S.W.3d 587, 591-93 (Mo. App. E.D. 2007); *State v. Smith*, 33 S.W.3d 648, 651 (Mo. App. W.D. 2000); and *State v. West*, 21 S.W.3d 59, 61 (Mo. App. W.D. 2000). We find these cases inapposite. In *Politte*, there was joint access to one area containing drugs, and defendant made a statement that could be viewed as suggesting knowledge, but no evidence of control over the drugs. 391 S.W.3d at 538. In *Ramsey*, the defendant had joint, routine access to where the drugs were kept, but nothing else tying him to the drugs. 358 S.W.3d at 593. In *Cushshon*, a possession of a controlled substance in a county jail case under section 221.111, there was no evidence of knowledge of drugs found in an area of joint control. 218 S.W.3d at 590, 592. In *Smith*, the drugs and other contraband were found at the defendant's residence, but there was no evidence that he had been inside the residence on a day when other persons had been inside. 33 S.W.3d at 655. In *West*, "even if [the defendant] knew about the methamphetamine in the freezer [she routinely accessed] and recognized it as a controlled substance, this knowledge alone fails to support a finding that [she] possessed the methamphetamine"; there was no evidence reasonably inferring that she had control or an intent to possess. 21 S.W.3d at 66-67. Because sufficient evidence supports the State's claim that Defendant had constructive possession of the methamphetamine found in the office, we need not consider whether sufficient evidence supported her possession of the methamphetamine located in the bedroom closet. *See State v. Bacon*, 156 S.W.3d 372, 379 n.2 (Mo. App. W.D. 2005).