

# In the Missouri Court of Appeals
# Eastern District

## DIVISION TWO

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED107796 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court of |
| | ) | the St. Louis County |
| vs. | ) | |
| | ) | Honorable Thea A. Sherry |
| ROBERT A. YOUNG, | ) | |
| | ) | |
| Appellant. | ) | Filed: June 2, 2020 |

### Introduction

Robert Young ("Defendant") was found guilty of possession of a controlled substance in the Circuit Court of St. Louis County. Defendant brings two points on appeal.

Defendant's first point on appeal claims the trial court erred in denying a mistrial during the direct examination of Detective Callahan. Defendant objected when the State asked Callahan why he believed heroin found incident to a search of the 700-square foot single bedroom residence (the "residence") did not belong to a fellow resident ("Female Resident"). Callahan testified the Female Resident said the heroin did not belong to her. Defendant objected to the use of inadmissible testimony of a co-defendant. Defendant asked the trial court to grant a mistrial. The trial court sustained the objection but denied the mistrial. The trial court instructed the jury

to disregard the State's question and the answer. Defendant claims this was inadmissible evidence which deprived Defendant of a fair trial. The State claims the curative instruction cured any prejudice resulting from the question and answer.

Defendant's second point on appeal claims the State failed to present sufficient evidence to convict him of possession of a controlled substance found in a dresser in the bedroom of the residence. Defendant claims the only evidence presented by the State was an attempt to impede officers as they entered the residence for the search subject to a search warrant. The State claims it also showed Defendant lived at the residence and routinely accessed the residence for six weeks leading up to the search.

Both of Defendant's points are denied. Defendant has failed to show any prejudice which was not cured by the trial court's instruction to the jury to disregard the question and answer during the direct examination of Detective Callahan. Based on a review of the record, the State presented sufficient evidence of possession by showing Defendant had routine access to the residence for weeks prior to a search, Defendant lived at this residence, and Defendant attempted to impede officers as they entered the residence with a valid search warrant. The trial court's judgment is affirmed.

## Factual and Procedural Background

Detective Callahan suspected Defendant was involved with narcotics. Callahan led six weeks of surveillance on the residence at issue in this case. Callahan testified utilities records showed Defendant lived there. The officers saw Defendant coming and going from the residence. After the surveillance, Callahan received and executed a search warrant.

Eighteen officers, including a Tactical Operations Squad (a SWAT Team) armed with a battering ram, arrived to search the premises on May 4, 2016. When they arrived, Defendant attempted to prevent the officers from entering by pushing back on the door. During the search, officers found two parcels of mail addressed to Defendant. A canine officer alerted the team to a location in a dresser in the bedroom of the residence. Officers found a floral-print glasses case inside the dresser. Inside the glasses case, officers found a plastic bag containing a dark-substance which tested positive for heroin. Photographs of the top of the dresser showed women's jewelry and make-up products along with an array of other items strewn about the top of the dresser and the floor. Other photographs of the bedroom were displayed to the jury during opening statements and throughout trial. The Female Resident was also present on the date of the search.

Defendant was arrested subsequent to the search and charged with possession of a controlled substance. Trial commenced on March 4-5, 2019. The State called: Callahan, the lead case officer; Officer Priaulx, a member of the search team; Officer Major, the crime scene photographer; and Joshua Robertson from the crime lab.

At trial, the State entered photographs into evidence of the residence before and after the search. The photographs were published to the jury.

During Callahan's direct examination, he testified both Defendant and the Female Resident lived at the residence. The State asked if Callahan investigated the Female Resident. Callahan did not investigate her. The State then asked Callahan if he believed the drugs belonged to the Female Resident. Callahan responded the Female Resident told him the drugs did not belong to her.

Defendant objected, and the trial court excused the jury for argument over the objection. Defendant objected to Callahan's response because Callahan presented a co-defendant's statement. Defendant argued the State could not bring in this evidence and moved for a mistrial. The State claimed the question did not require Detective Callahan to respond with inadmissible evidence. "It was not a question that called for hearsay." Defendant then argued, even if instructed, a reasonable juror would not be able to disregard this evidence. The State argued Defendant's opening statement focused heavily on the drugs belonging to the Female Resident. However, Defendant and the trial court agreed the opening statement only focused on the house belonging to the Female Resident. The trial court denied the motion for a mistrial. The trial court instructed the jury "to totally disregard the question and the answer." The court added, "It is stricken from the record."

Callahan testified his team conducted surveillance for six weeks prior to the search to confirm Defendant lived at the residence. The team observed Defendant come and go from the residence on several occasions over the weeks of surveillance. The team also observed other individuals with Defendant, but the others did not stay for long periods of time. Defendant attempted to keep the door closed preventing their entrance into the residence. Callahan testified the search uncovered mail addressed to Defendant with the address of the residence. One letter was addressed to Defendant from the State of Missouri Driver's License Bureau.

Defendant cross-examined Callahan about the bedroom. Callahan testified the photographs showed jewelry and a spray bottle of acetone or nail polish remover on the dresser. The glasses case was found somewhere inside the dresser.

Defendant moved for a new trial. Defendant argued:

The Court erred in denying Defendant's request for a mistrial after defense counsel objected to a putative co-defendant statement elicited during direct examination of

4

Detective Callahan. Specifically, the prosecutor elicited testimony from Detective Callahan that the detective knew the drugs were not the putative co-defendant's because she told him they were not her[']s which, in operation, directly implicated the defendant. The court's instruction to the jury to disregard the statement was an insufficient remedy and as a consequence of denying [D]efendant's request for a mistrial, [D]efendant's rights to due process, a fair trial and confrontation under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and Article I, Sections 10 and 18(a) of the Missouri Constitution were violated.

The trial court denied Defendant's motion.

This appeal followed.

## Discussion

Defendant argues two points on appeal. Defendant's first point claims the trial court erred in denying a mistrial during the direct examination of Detective Callahan. Defendant objected when the State asked Callahan why he believed the heroin did not belong to the Female Resident and Callahan claimed the Female Resident said the heroin did not belong to her. The trial court sustained the objection and instructed the jury to disregard the State's question and the answer. Defendant claims this was inadmissible evidence which deprived Defendant of a fair trial. The State claims the curative instruction cured any prejudice resulting from the question and answer.

Defendant's second point on appeal claims the State failed to present sufficient evidence to convict him of possession of a controlled substance found in a dresser in the residence. Defendant claims the only evidence the State presented connecting him to the heroin was his attempt to impede officers as they entered the residence for the search subject to a search warrant. The State claims it also showed Defendant lived at the residence and routinely accessed the residence for six weeks leading up to the search.

We address Defendant's sufficiency claim first.

5

*Point II*

"To determine whether the evidence presented was sufficient to support a conviction and to withstand a motion for judgment of acquittal, this Court does not weigh the evidence but rather accept[s] as true all evidence tending to prove guilt together with all reasonable inferences that support the verdict, and ignore[s] all contrary evidence and inferences." *State v. Clark*, 490 S.W.3d 704, 707 (Mo. banc 2016) (alteration in original) (internal quotations omitted). We do not supply missing evidence or give the State "the benefit of unreasonable, speculative or forced inferences." *Id.* (internal quotations omitted). Evidence is sufficient to support a conviction when "there is sufficient evidence from which a reasonable [fact-finder] might have found the defendant guilty beyond a reasonable doubt." *Id.* (internal quotations omitted).

> Possession, regarding a controlled substance or drug paraphernalia, is defined by statute. [A] person, with the knowledge of the presence and nature of a substance, has actual or constructive possession of the substance. A person has actual possession if he has the substance on his person or within easy reach and convenient control. A person who, although not in actual possession, has the power and the intention at a given time to exercise dominion or control over the substance either directly or through another person or persons is in constructive possession of it. Possession may also be sole or joint. If one person alone has possession of a substance possession is sole. If two or more persons share possession of a substance, possession is joint[.]

Section 195.010(34).

Two essential elements of possession are: "(1) that [the defendant] had conscious and intentional possession of the controlled substance, either actual or constructive, and (2) that [he] was aware of the presence and nature of the substance." *State v. Buford*, 309 S.W.3d 350, 355 (Mo. App. S.D. 2010) (quoting *State v. West*, 21 S.W.3d 59, 63 (Mo. App. W.D. 2000)). Knowledge of the presence of a controlled substance alone is insufficient to sustain a conviction for possession. *State v. Chavez*, 128 S.W.3d 569, 575 (Mo. App. W.D. 2004) (citing *State v. Morris*, 41 S.W.3d 494, 498 (Mo. App. E.D. 2000)). The State must also present evidence

6

establishing the defendant exercised control over the controlled substance. *Id*. (citing *Morris*, 41 S.W.3d at 498).

When actual possession cannot be shown, the State carries the burden of proving constructive possession coupled with facts buttressing the inferences of possession. *State v. Power*, 281 S.W.3d 843, 848 (Mo. App. E.D. 2009) (citing *State v. Metcalf*, 182 S.W.3d 272, 274 (Mo. App. E.D. 2006)). The State may argue reasonable inferences from the evidence. *Chavez*, 128 S.W.3d at 578 (citing *Middleton v. State*, 103 S.W.3d 726, 742 (Mo. banc 2003)).

"The two prongs of this test are not entirely independent." *State v. Purlee*, 839 S.W.2d 584, 588 (Mo. banc 1992). At a minimum, constructive possession requires evidence the defendant had access to and control over the premises where the substance was found. *Id*. If a defendant has exclusive control of the premises, an inference of possession and control of the substance is raised. *Id*. If non-exclusive control over the premises is shown, however, further evidence or admission connecting the accused with the illegal drugs is required. *Id*. The fact that others also have access to an area where drugs are found does not destroy the incriminating fact that a defendant has access to that area. *State v. Steward*, 844 S.W.2d 31, 33 (Mo. App. W.D. 1992).

Two examples of additional evidence include routine access to the area where the substance is found and acts which imply consciousness of guilt. *State v. West*, 21 S.W.3d 59, 63 (Mo. App. W.D. 2000) (internal citations omitted). We must consider the totality of the circumstances when determining whether sufficient incriminating circumstances exist to prove knowledge of and also control over the substances at issue. *State v. Power*, 281 S.W.3d 843, 848 (Mo. App. E.D. 2009).

Here, the State presented testimony officers observed Defendant regularly coming and going from the residence in question for six weeks before the search. The State showed mail found in the search addressed to Defendant at the residence. Defendant held himself out as living at the residence to the Driver's License Bureau. The State also presented testimony the utilities records for the residence were in Defendant's name. The State showed, when officers arrived to search the residence with a valid search warrant, Defendant attempted to close the door and impede their entrance to the 700-square foot, one-bedroom residence.

Defendant was seen routinely coming and going from the residence for weeks before the search and treated the residence as a permanent home for months leading up to the date of the search. From this evidence, a juror could reasonably infer Defendant had control over the premises. Defendant and the Female Resident may have shared control over the premises but this does not destroy this incriminating factor. *See Steward*, 844 S.W.2d 33. This evidence, alone, would not be sufficient to show constructive possession.

But, here, Defendant attempted to impede the officers from entering into the residence. This showed a consciousness of guilt. Based on the result of the search and Defendant's attempt to impede officers, a juror could reasonably infer Defendant knew about the heroin in the bedroom dresser.

The State investigated Defendant for weeks leading up to the search. The State presented evidence Defendant had control over the premise in question, whether exclusive or shared. Defendant's actions on the date of the search allowed the jury to infer Defendant knew the illegal substances were in the residence.

Defendant's actions on the date of the search are sufficient incriminating circumstances to show he had knowledge of the presence of the drugs. Defendant attempted to stop police from

entering the residence with a valid search warrant. This action is sufficient to allow a jury to infer Defendant knew of the illegal substances in the bedroom of the 700-square foot apartment.

However, knowledge of the presence of the drugs is insufficient to show constructive possession. *Chavez*, 128 S.W.3d at 575 (citing *Morris*, 41 S.W.3d at 498). Defendant's actions as observed through surveillance for six weeks leading up to the day of the search amount to incriminating circumstances suggesting Defendant also had control and dominion over the residence. Defendant was coming and going from the residence regularly. Defendant had mail delivered to him at the residence. The State offered testimony utilities were registered to Defendant for this residence. This type of regular and documented presence suggests control over the premises enough to show at least shared dominion over the residence and bedroom in this case.

Defendant argues the *Ramsey* and *Clark* cases support his claim on appeal.[1] *See State v. Ramsey*, 358 S.W.3d 589 (Mo. App. S.D. 2012); *see also State v. Clark*, 490 S.W.3d 704 (Mo. banc 2016). Ramsey lived with a woman in a one-bedroom home. Police arrived with a search warrant as Ramsey came home. *Ramsey*, 358 S.W.3d at 590. The police found 1.31 grams of cocaine in a bedroom wastebasket, hidden under an opaque trash bag liner. *Id.* That was the extent of the evidence presented in the *Ramsey* case. The *Ramsey* court conceded this was a joint control case with two inhabitants. *Id.* at 591. The State did not present any evidence to show

---

[1] Defendant also argues the *Withrow* and *Barnett* cases support his contentions on appeal. *See State v. Withrow*, 8 S.W.3d 75 (Mo. 1999), *holding modified by State v. Claycomb*, 470 S.W.3d 358 (Mo. banc 2015); *State v. Barnett*, 595 S.W.3d 515 (Mo. App. E.D. 2020), reh'g and transfer denied (Mar. 9, 2020). The Supreme Court of Missouri has cautioned against use of the analysis in *Withrow* due to a standard of review issue. *Claycomb*, 470 S.W.3d at 362. To the extent the analysis in *Withrow* survives the challenge in *Claycomb*, there was no evidence Withrow lived at the residence in question, which is a major factor in this case. *Withrow*, 8 S.W.3d at 81. Barnett was a passenger in a vehicle and acted nervously when officers searched and found drugs in the vehicle. *See generally Barnett*, 595 S.W.3d 515, 523 (Mo. App. E.D. 2020), *reh'g and transfer denied* (Mar. 9, 2020). The incriminating circumstances for a vehicle are similar to but not identical to those for a residence. So, we caution the use of cases involving vehicle searches as authority for cases involving the search of a residence. *Id*. Like in *Withrow*, there was no evidence Barnett owned the vehicle or had access to it before the date of the incident. *Id*. For these reasons, neither *Barnett* nor *Withrow* support Defendant's contentions when Defendant was shown to live at the residence in question.

9

Ramsey attempted to prevent or inhibit the police search or any details of an investigation to show routine access to the apartment or bedroom. *Id.* at 591-92.

Here, the State showed Defendant attempted to shut the door on the police to stop them from entering the residence to complete the search. The State also showed six weeks of surveillance during which police observed Defendant coming and going from the residence. Unlike *Ramsey*, the State presented evidence of consciousness of guilt and routine access to the premises.

In *Clark*, a fellow resident was present when police arrived to search Clark's apartment. *Clark*, 490 S.W.3d at 710. The fellow resident claimed the house belonged to her. *Id.* Clark was found in the east bedroom of the apartment. *Id.* Clark had over $500 cash on his person. *Id.* Drugs were found in the east bedroom. *Id.* However, Clark's personal items and clothes were found in a separate bedroom in the house. *Id.* The *Clark* decision stands for the proposition proximity and speculative evidence alone is not sufficient to show constructive possession. *Id.* at 711.

Here, although Defendant was not in the same room as the heroin, Defendant's actions attempting to impede officers showed a consciousness of guilt allowing an inference of knowledge of the heroin. In an approximately 700-square foot residence with only one bedroom, a jury could reasonably infer Defendant knew of the presence of the heroin from his actions when the officers arrived and routine access to the premise.

Defendant further argues the photographs of the bedroom show the Female Resident had access to the bedroom because there was make-up and nail polish remover on the dresser. Defendant argues the State, therefore, failed to show Defendant also had access. However, the photographs filed as exhibits on appeal, which were entered at trial and seen by the jury, do not

conflict with the notion Defendant had access to the bedroom. The photographs do not imply the bedroom was solely occupied by the Female Resident, as Defendant suggests. For the reasons stated above, specifically, the fact Defendant was seen coming and going from the residence regularly for weeks leading up to the search and the fact Defendant held himself out to the State and other entities as living at the residence, the State has presented evidence Defendant had access to the entire 700-square foot apartment.

Extensive officer surveillance and incriminating factors like utilities and mail found at the residence allow a jury to infer Defendant had access and control over the residence. When coupled with Defendant's attempt to impede the search, there is sufficient evidence for a jury to infer both control over and knowledge of the illegal drugs in this case.

Point II is denied.

*Point I*

To review this claim, Defendant must have preserved an objection made at trial for our review on appeal. *State v. Salmon*, 563 S.W.3d 725, 731 (Mo. App. E.D. 2018). The general rule for the preservation of error is an objection stating specific grounds must be made at trial, the same grounds must be set out in the motion for new trial, and these grounds must be renewed in the appellate brief. *Id*. at 731-32 (quoting *State v. Jackson*, 948 S.W.2d 138, 141 (Mo. App. E.D. 1997)). At trial, Defendant objected to Detective Callahan's response because it was the statement of a co-defendant and inadmissible. In the motion for new trial, Defendant argued the statement was inadmissible and it directly implicated Defendant. On appeal, Defendant argues the trial court erred because Detective Callahan's testimony was inadmissible hearsay and a

11

statement to an officer during an interrogation which deprived Defendant of a fair trial. While inartful, we accept the issue as preserved.

A trial court is within its sound discretion to grant or deny a motion for mistrial. *State v. Byers*, 551 S.W.3d 661, 666 (Mo. App. E.D. 2018) (internal citations omitted). A mistrial is a "drastic remedy" warranted only when "the prejudice to the defendant cannot otherwise be removed." *Id.* (internal citations omitted). We review a trial court's refusal to grant a mistrial only for an abuse of discretion as it is in a better position to determine if any prejudice can be ameliorated by less drastic means. *Id.* (citing *Croxton v. State*, 293 S.W.3d 39, 42 (Mo. App. E.D. 2009) and *State v. Meyers*, 333 S.W.3d 39, 43 (Mo. App. W.D. 2010)). A trial court abuses this discretion when its decision is "clearly against the logic of the circumstances" and "so arbitrary and unreasonable as to shock [our] sense of justice[,] indicat[ing] a lack of careful consideration." *Id.* We will only reverse an abuse of discretion for failure to grant a mistrial when the trial court's decision deprived the defendant of a fair trial. *Id.* "Trial court error is not prejudicial unless there is a reasonable probability that the trial court's error affected the outcome of the trial." *State v. Kemp*, 212 S.W.3d 135, 145-46 (Mo. banc 2007).

In this case, the jury heard Callahan testify the Female Resident claimed the drugs did not belong to her. The trial court immediately excused the jury for discussion of Defendant's objection. The trial court then sustained the objection and instructed the jury to disregard both the question and the answer. "It is generally presumed that a jury will properly follow an instruction given by the court." *State v. Stone*, 280 S.W.3d 111, 117 (Mo. App. E.D. 2009) (citing *State v. Madison*, 997 S.W.2d 16, 21 (Mo. banc 1999)).

Defendant has to show the trial court's response deprived him of a fair trial. A mistrial is a drastic remedy. *Byers*, 551 S.W.3d at 666 (internal citations omitted). Defendant claims the

State purposefully elicited this testimony from Callahan and the statement directly implicated Defendant. Defendant has failed to show the State purposefully asked the question to elicit this specific response.

There was only one mention during the trial of the Female Resident's alleged comment to Callahan. The State did not argue the comment in its closing. The trial court instructed the jury to disregard the question and answer. As Defendant concedes, corrective instructions are usually adequate to remedy any prejudice caused by the admission of improper evidence into trial. Defendant cites no reason why the trial court's instructions were inadequate to remedy any prejudice caused by Detective Callahan's statement in this case. The trial court's instruction was a sufficient remedy, here.

Because there was sufficient evidence for a reasonable juror to find Defendant guilty of the charged crimes and the prejudicial effect of the inadmissible testimony in this case was minimal, we find it was not against the logic of the circumstances for the trial court to instruct the jury as it did.

Point I is denied.

Conclusion

The State presented sufficient evidence from which a jury could reasonably find Defendant knew of the presence and nature of the illegal substance and held control over the substance. The extensive surveillance, testimony at trial, and evidence presented to the jury showed Defendant had more-than-routine access to the residence and held himself out as living at the residence. Defendant's attempt to impede the police entry on the day of the search allowed

the jury to infer a consciousness of guilt and knowledge of the illegal substances. The State presented sufficient evidence for a finding possession in this case.

Defendant has failed to show prejudice from the trial court's decision to sustain the objection at trial and instruct the jury to disregard the inadmissible evidence instead of granting a mistrial.

Defendant's points are denied. We affirm the trial court's judgment.

_____
Philip M. Hess, Presiding Judge

Kurt S. Odenwald, J. and
Lisa P. Page, J. concur.

14