STATE of Missouri, Respondent,

v.

Jeffrey G. MIZANSKEY, Appellant.

No. WD 49514.

Missouri Court of Appeals,
Western District.

April 4, 1995.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 30, 1995.

Application to Transfer Denied
July 25, 1995.

Randall B. Johnston, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Michelle A. Freund, Asst. Atty. Gen., Jefferson City, for respondent.

Before FENNER, C.J., P.J., and BERREY and ULRICH, JJ.

FENNER, Chief Judge.

Appellant, Jeffrey Mizanskey, appeals his conviction after trial by jury for possession of more than five grams of marijuana with intent to deliver and distribute in violation of section 195.211.2, RSMo 1993 Supp. Mizanskey was charged as a prior and persistent drug offender and sentenced by the trial court to life imprisonment. On appeal, Mizanskey raises five points of error, the first of which, the trial court's failure to give the jury an instruction on the lesser included offense of possession of less than thirty-five grams of a controlled substance, is dispositive of the case.

The pertinent facts are as follows: On December 18, 1993, David S. Schwalm, a patrolman with the Missouri State Highway Patrol, pulled over a 1978 or 1979 Mercury Cougar with New Mexico license plates. The car was driven by Jose Reyes and contained two passengers, one of whom was Jorge Ibuado. Reyes informed Officer Schwalm that the three were en route to Sedalia, Missouri to meet with a friend. After asking for, and obtaining, consent to search the vehicle, the officer found fourteen bricks of marijuana concealed therein.

Early the next morning, December 19, 1993, Corporal James Wingo of the Missouri State Highway Patrol was called to the Johnson County Sheriff's Department, where he proceeded to speak with Reyes and Ibuado. After their discussion, Corporal Wingo transported Reyes, Ibuado, Reyes' vehicle, and one of the seized bricks of marijuana to Sedalia in an attempt to apprehend additional individuals who might have been involved in a plan to sell the illegal substance.

Corporal Wingo obtained two adjoining rooms at the Super 8 Motel in Sedalia. Reyes, Ibuado and the brick of marijuana were left in one room and, in order to monitor any events which might take place, a surveillance camera and tape recorder were set up. The surveillance team was stationed in the adjoining room.

In addition to these actions, Corporal Wingo purchased a newspaper and instructed Reyes to mark his room number upon it. This newspaper was placed under the windshield wiper of Reyes' vehicle.

Shortly after noon, Mizanskey entered the parking lot of the Super 8 Motel in his red Firebird. Mizanskey pulled up to Reyes' vehicle, exited his own vehicle, looked at the license plate on Reyes' vehicle and, allegedly, glanced at the newspaper. He then returned to his vehicle and drove off, returning approximately five minutes later accompanied by Atilano Quintana. Mizanskey once again stopped his vehicle near Reyes' vehicle, at which time Quintana exited the Firebird, removed the newspaper off Reyes' vehicle, and returned to Mizanskey's car. Mizanskey then drove his vehicle to the entrance of the hotel, parked the car and the two men proceeded to the room containing Reyes, Ibuado and the brick of marijuana.

A written transcript of the surveillance tape reveals the events that took place in the room. Although much of the discussion between Quintana, Ibuado and Reyes took place in Spanish, a language Mizanskey claims not to understand, Quintana spoke in English when addressing Mizanskey.

While in the room, Quintana asked Mizanskey when he would "come across with the funds." Mizanskey responded that someone had 'ten grand' set aside for him and that the person got off later, but that he would call him to see if he could get ahold of the money. He apparently tried to place the call, but was unsuccessful.

Later, after taking the brick of marijuana from Ibuado, Quintana handed it to Mizanskey, who held it in his hands, said about "three, four" (a gesture which the State argues shows Mizanskey was approximating the weight of the package) and returned it to Quintana. Quintana then told Mizanskey that they should see if "we can unload this real quick. And then we'll ... The car will be okay there until we are ready to unload." Mizanskey responded "that will work." As Mizanskey and Quintana prepared to leave the room, Mizanskey asked Quintana if he wanted to put "the baby" in his jacket. Quintana instead tucked the package under his own coat. Mizanskey then offered to walk beside Quintana as they left.

Shortly after they left the hotel room, Mizanskey and Quintana were arrested. After being arrested, the officers found three clear plastic bags on Mizanskey's person. Lab reports determined one of the bags contained approximately two grams of marijuana, while the other two bags contained residue of methamphetamine. At trial, Mizanskey admitted that the marijuana found in the bag was his own.

Mizanskey denied, however, any knowledge that the package Quintana handed him contained marijuana. He further claimed that he was never even aware that an illegal transaction was taking place until he was arrested. Mizanskey argued that, as far as he knew, Reyes and Ibuado had driven to Sedalia to assist Quintana in moving Quintana's sister's furniture back to New Mexico— where she had recently moved. He claims he was merely assisting Quintana, who also resided in New Mexico, meet up with Reyes and Ibuado so that they could begin moving the furniture.

With regards to the discussion of funds, Mizanskey contends he thought Quintana was asking him about how he was going to pay for two cars he and a friend were planning on purchasing, restoring, and then selling. To support his claim, Mizanskey's part-

ner in this venture testified that the purchase of one of the automobiles was tentatively scheduled for the day of Mizanskey's arrest. Furthermore, Mizanskey claims that when he held the package in his hands and said three or four, he believed that the package contained home-made Mexican food; he was merely trying to determine the amount of food the package contained. Finally, Quintana himself appeared at trial and testified that Mizanskey had no knowledge that an exchange of marijuana had been pre-arranged or completed until after their arrest.

### Lesser Included Offense

Mizanskey's first point on appeal alleges that the trial court erred by refusing to instruct the jury on the lesser included offense of possession of less than thirty-five grams of a controlled substance in addition to instruction on the charged offense of possession of greater than five grams of a controlled substance with intent to distribute. Mizanskey offered the lesser included instruction at trial and included the issue in his Motion for New Trial.

■■■ Missouri courts have consistently held that section 556.046, RSMo 1986, requires trial courts to instruct the jury on all lesser-included offenses supported by the evidence. *See State v. Story,* 646 S.W.2d 68, 73 (Mo. banc 1983); *State v. Farley,* 863 S.W.2d 669, 671 (Mo.App.1993). Failure to do so has been found to constitute error, the prejudicial effect of which is to be judicially determined. *State v. Beck,* 849 S.W.2d 668, 669 (Mo.App.1993). Both the facts and the instructions are to be considered together when determining prejudice. *Id.*

■■■ When examining whether one offense is a lesser included of the other, the analysis focuses on the elements required by the statutes proscribing the offenses, not the evidentiary facts of each case. *State v. Polk,* 864 S.W.2d 1, 3 (Mo.App.1993); *State v. Gobble,* 675 S.W.2d 944, 948 (Mo.App.1984). Specifically, courts have held that:

> If the greater of two offenses includes all the legal and factual elements of the lesser, the greater includes the lesser; but if the lesser offense requires the inclusion of some necessary element not so included in the greater offense, the lesser is not necessarily included in the greater.

[*Gobble,* 675 S.W.2d at 948 (citation omitted).] In short, "[a]n instruction on a lesser offense is not proper unless it is impossible to commit the greater without first committing the lesser...." *Polk,* 864 S.W.2d at 3 (citations omitted).

■ Accordingly, the primary question before us is whether possession of more than five grams of a controlled substance with intent to distribute includes all the statutory elements of possession of less than thirty-five grams of a controlled substance. An analysis of the pertinent language of each statute as set forth in the footnote below [1] reveals that the answer to this question is in the affirmative.

■■■ In order to be convicted of possession of more than five grams of a controlled substance with intent to distribute under section 195.211.2, the State must prove that the defendant possessed more than five grams of a controlled substance, that the defendant knew of its presence and illegal nature, and that he or she intended to distribute or deliver it. To be convicted of possession of less

---

1. § 195.211, RSMo.1993. **Distribution, delivery, manufacture or production of a controlled substance, penalty.**
   1. Except as authorized by sections 195.005 to 195.425, it is unlawful for any person to distribute, deliver, manufacture, produce or attempt to distribute, deliver, manufacture or produce a controlled substance **or to possess with intent to distribute, deliver,** manufacture, or produce a controlled substance.
   2. Any person who violates this section with respect to any controlled substance except five grams or less of marijuana is guilty of a class B felony. (emphasis added)

§ 195.202, RSMo.1993. **Possession or control of a controlled substance, penalty.** 1. Except as authorized by sections 195.005 to 195.425, it is unlawful for any person to possess or have under his control a controlled substance.
2. Any person who violates this section with respect to any controlled substance except thirty-five grams or less of marijuana is guilty of a class C felony.
3. Any person who violates this section with respect to not more than thirty-five grams of marijuana is guilty of a class A misdemeanor.

than thirty-five grams of a controlled substance, the State must merely prove that the defendant intentionally possessed the substance and that he was aware of the presence and nature of the substance in question. Since it is impossible to possess more than five grams of a controlled substance with intent to distribute without first possessing the substance, we find that the second offense is a lesser included of the first.[2]

■ Section 556.046.2 relieves a trial court of its duty to instruct on a lesser included offense if there is no evidence which would establish a basis for acquittal of the greater offense and conviction of the lesser included offense. *State v. Stepter*, 794 S.W.2d 649, 652 (Mo. banc 1990); *State v. Harris*, 825 S.W.2d 644, 648 (Mo.App.1992). When examining whether this section applies to the case at hand, we must review the evidence to determine whether there exists both a basis for acquittal of the charged offense of possession of more than five grams of a controlled substance with intent to distribute *and* a basis for conviction of the proposed lesser included offense of mere possession of less than thirty-five grams of a controlled substance. *See Stepter*, 794 S.W.2d at 652. After reexamining the facts of this case, we find that both elements have been met.

We begin our analysis by examining the second, and, in this case, more straightforward, element—whether evidence exists establishing a basis to convict on the proposed lesser included offense. Mizanskey testified at trial that he had some marijuana on him at the time of his arrest and that he smoked marijuana. Furthermore, the laboratory report of the substance found in one of the baggies on Mizanskey's person indicates it contained marijuana. Clearly, such evidence creates a basis for finding Mizanskey guilty of possession of a controlled substance.

Turning now to the first, and more difficult inquiry raised above, we must examine whether the evidence establishes a basis to acquit on the charged offense. At trial, Mizanskey presented several witnesses who tes-

tified that his sole purpose in accompanying Quintana to the hotel was to help Quintana pick up Quintana's sister's furniture. As previously noted, Quintana, who pleaded guilty to the drug charges levied against him, testified that Mizanskey had no idea that any illegal transactions would be occurring in the hotel room that day. Finally, Mizanskey himself testified that he did not know that any illegal activities had occurred until after he had been arrested.

■ A trial court should resolve all doubts regarding the evidence in favor of instructing on the lower offense. *State v. Beck*, 849 S.W.2d 668, 670 (Mo.App.1993). The inquiry of which of the two or more grades of offense to which a party might be guilty should be left to the province of the jury. *Id.* Questions of the credibility of witnesses and the effects of conflicts or inconsistencies in the testimony of any witness are questions for the jury. *Id.*

At the time the instructions were submitted, it was possible that the jury might have believed the testimony that Mizanskey was not aware of the drug transaction going on in the hotel room and, therefore, he was not guilty of actual or constructive possession of the brick of marijuana. A basis for acquittal was, therefore, established and Mizanskey was prejudiced by the court's failing to instruct on the lesser included offense.

The necessity of discussing the remaining points of appeal is rendered moot by our finding that the court erred in not instructing the jury on the lesser included offense. Defendant's conviction is reversed and the cause is remanded for new trial.

All concur.

---

2. For the purposes of this analysis, if a defendant was found with 35 grams or less of marijuana, § 195.202.3 would provide the lesser included offense; if the defendant was found with greater than 35 grams of a controlled substance, § 195.202.2 would provide the lesser included offense.