IN THE MISSOURI COURT OF APPEALS
 WESTERN DISTRICT
 STATE OF MISSOURI, )
 Respondent, )
 )
 v. ) WD83914
 )
 MATTHEW JAY SCHURLE, ) FILED: September 7, 2021
 Appellant. )
 Appeal from the Circuit Court of Nodaway County
 The Honorable Corey K. Herron, Judge
 Before Division One: Lisa White Hardwick, P.J., and
 Alok Ahuja, and Anthony Rex Gabbert, JJ.
 Following a jury trial in the Circuit Court of Nodaway County, Matthew

Schurle was convicted of delivery of methamphetamine, in violation of § 579.020,1

possession of marijuana, in violation of § 579.015, and unlawful possession of drug

paraphernalia, in violation of § 579.074. Schurle appeals. He contends that there

was insufficient evidence to support his conviction for delivery of a controlled

substance. Schurle also argues that the circuit court plainly erred in finding that

he waived his right to counsel, without conducting a hearing to determine that

Schurle knowingly and voluntarily chose to represent himself, and without securing

his written waiver. Finally, Schurle argues that the circuit court plainly erred in

finding that he was not indigent, and therefore that he was not eligible for

appointed counsel.

 1 Unless otherwise indicated, statutory citations refer to the 2016 edition of the
Revised Statutes of Missouri, updated by the 2017 Supplement.
 We conclude that the evidence was sufficient to support Schurle’s conviction

for delivery of a controlled substance. As the State concedes, however, the circuit

court plainly erred by proceeding to trial without determining after a hearing that

Schurle was knowingly and intelligently waiving his right to representation.

Consistent with the State’s concession of error, Schurle’s convictions are reversed,

and the case is remanded for further proceedings consistent with this opinion.

 Factual Background
 At approximately 3:00 a.m. on March 29, 2018, Sergeant Austin Hann of the

Nodaway County Sheriff’s Department witnessed Schurle make a left turn without

signaling at an intersection east of Ravenwood. Sergeant Hann followed Schurle’s

vehicle, and observed it drift toward the soft shoulder of the roadway. Sergeant

Hann initiated a traffic stop.

 When Sergeant Hann approached the vehicle, he observed that Schurle was

on his phone and appeared to be leaving a voicemail for someone, indicating that he

had been pulled over, and giving his location. Schurle’s hands were visibly shaking,

and he avoided eye contact with Sergeant Hann. This led Sergeant Hann to suspect

that some criminal activity was underway. Throughout their conversation,

Sergeant Hann noted that Schurle repeatedly said “uh” and “um”, and would trail

off without completing his sentences, suggesting that Schurle was delaying as he

attempted to think of things to say.

 Schurle stated that he was coming from his storage unit, but based on the

direction Schurle had been driving, Sergeant Hann concluded that he was headed

toward the only storage units in the area, not away from them. Sergeant Hann

asked Schurle if anything was going to “come up” when Sergeant Hann checked

Schurle’s identification, and Schurle informed him that there was an active warrant

for his arrest. Sergeant Hann then requested that Schurle step out of the vehicle,

 2
handcuffed him, and had him sit in Sergeant Hann’s patrol car. Sergeant Hann

confirmed that there was an active warrant for Schurle’s arrest.

 Sergeant Hann arranged for Schurle’s vehicle to be towed, since Schurle was

being arrested. As a part of standard protocol, Sergeant Hann attempted to conduct

an inventory search of Schurle’s vehicle, but found that the car was locked with the

keys in the ignition. Sergeant Hann felt that Schurle was “making a great effort to

prevent anyone from gaining access [to his] vehicle.”

 Through the windows of Schurle’s vehicle, Sergeant Hann was able to see

what appeared to be a marijuana cigarette sitting in plain view in the center

console. Sergeant Hann then had his dog sniff around the outside of Schurle’s car,

and the dog indicated that it had detected narcotics in the trunk area.

 Sergeant Hann searched Schurle and found $480 in cash, all in $20 bills, in

Schurle’s pocket. Schurle claimed that he had just gotten paid, but then

“immediately stated that he did not have a job.” At trial, Schurle admitted that the

explanation for the money which he gave to Sergeant Hann was a lie. Schurle

offered another explanation for the money at trial, testifying that it was gas money

to enable him to drive to California. He testified that his sister had wired $300 of

the money to him, and that he had earned the remainder.
 Sergeant Hann also found a digital scale in the front pocket of Schurle’s

hooded sweatshirt. The scale was covered in a crystal residue, which was later

determined to be methamphetamine. The scale was packaged to look like a bar of

soap from a hotel. Sergeant Hann testified without objection that the digital scale

he found in Schurle’s pocket was consistent with “[t]he weighing and measuring of

narcotics for distribution,” and that such digital scales were commonly used in drug

transactions.

 3
 Schurle was transported to the jail and was searched again by Sergeant

Hann. Sergeant Hann found a spare key for Schurle’s vehicle hidden in the lining

of his vest.

 A search of Schurle’s vehicle was conducted once it arrived at the jail.

Officers found a marijuana cigarette and a lock pick set in the center console, as

well as a portion of a glass pipe with residue on it in the back seat. In the trunk,

officers found rubber tubing containing a methamphetamine residue, and a

marijuana test kit.

 Schurle was charged with delivery of a controlled substance, for his

possession of methamphetamine with the intent to distribute; possession of a

controlled substance, for his possession of marijuana; and possession of drug

paraphernalia, for his possession of “rolling papers formed as a join[t].”

 Schurle posted a $10,000 bond and hired two private attorneys to represent

him. A year after private counsel entered their appearances, they filed motions to

withdraw. As justification for their withdrawal, the attorneys cited an inability to

agree with Schurle on litigation strategy, and his non-responsiveness concerning

payment of their past-due fees. Schurle consented to his attorneys’ withdrawal. He

asked the court how he could receive the assistance of the Public Defender, because
“[t]he limiting factor [on obtaining new counsel] is finances.” The court granted the

motions to withdraw on April 22, 2019, and continued Schurle’s trial to allow him

time to obtain new counsel.

 Schurle applied to the Public Defender for representation. On May 6, 2019,

the Public Defender filed a Determination of Non-Indigency with the circuit court,

which concluded that Schurle was not indigent because he had previously retained

private counsel, and had also posted a $10,000 bond. Even though private counsel

had withdrawn due in part to Schurle’s inability to pay their fees, the Public
Defender asserted that “[i]t is not presumed that when private counsel requires

 4
further compensation to take a case to trial, that a Public Defender Attorney can be

utilized by default when private counsel chooses to discontinue their relationship

with the defendant.”

 Schurle appealed to the circuit court, which held a hearing on May 16, 2019.

Schurle informed the court that he had posted bond and retained private counsel

with money he had received from his father. Schurle stated that his father had

stopped paying for the costs of his defense, and that further financial resources from

his father “[we]re no longer available.” Schurle informed the court that he was

presently unemployed and homeless, living on a friend’s couch. Although Schurle

stated that it was his intent to move to California, the court noted that Schurle was

able-bodied, and that there was nothing preventing him from obtaining a temporary

job in Missouri. Ultimately, the court determined it could not “find any grounds to

overturn the public defender’s decision.” “You have the ability . . . to earn income,

you just choose . . . not to, so I'm [not] going to overrule their finding.” The court

then set the case for trial on September 30, 2019, stating that this should give

Schurle enough time to retain counsel.

 The trial began as scheduled, with Schurle representing himself. The jury

convicted Schurle as charged and recommended a term of imprisonment and fines
on each offense. The court accepted the jury’s recommendation, sentencing Schurle

to ten years’ imprisonment on Count I, to run consecutively to sentences of one year

in the county jail on Counts II and III (which were to run concurrently with each

other). The court also assessed a $1,000 fine on Count I, and $500 fines on both

Count II and Count III.

 Schurle appeals. He has been represented by the Public Defender in

connection with this appeal.

 5
 Discussion
 Schurle raises three Points on appeal. First, he argues that there was

insufficient evidence to support his conviction for delivery of a controlled substance,

as there was no evidence presented at trial that Schurle intended to distribute the

methamphetamine residue found in his possession. Second, Schurle argues that he

did not effectively waive his right to the assistance of counsel, since the circuit court

failed to secure Schurle’s written waiver of counsel, and failed to hold a hearing to

ensure that he understood his rights and the perils of self-representation. In his

final Point, Schurle argues that it was plain error for the circuit court to find him

ineligible for Public Defender services based on his future earning capacity.

 I.
 In his first Point, Schurle argues that the evidence was insufficient to

support his conviction for delivery of methamphetamine, because the evidence fails

to prove that he had an intent to distribute the methamphetamine residue found on

the digital scale in his possession at the time of his arrest.

 We conclude in § II, below, that Schurle is entitled to a new trial because the

circuit court failed to obtain a valid waiver from Schurle of his right to counsel.

Despite that conclusion, we must separately address Schurle’s first Point, which

makes a sufficiency-of-the-evidence argument. “The double jeopardy clause of the
United States constitution precludes a second trial after a reversal based solely on

the insufficiency of evidence.” State v. Barber, 635 S.W.2d 342, 345 (Mo. 1982);

accord State v. Lehman, 617 S.W.3d 843, 844 n.2 (Mo. 2021) (“‘[I]f a conviction is

reversed solely due to evidentiary insufficiency the double jeopardy clause requires

judgment of acquittal.’” (quoting State v. Liberty, 370 S.W.3d 537, 553 (Mo. 2012)).

Therefore, if we determined that the evidence was insufficient to support Schurle’s

conviction for delivery of methamphetamine, the double jeopardy clause would bar a
retrial for that offense. Because Schurle’s sufficiency-of-the-evidence argument

 6
would entitle him to broader relief than his right-to-counsel arguments, we consider

Point I despite our disposition of his remaining claims. See, e.g., State v. Matthews,

552 S.W.3d 674, 681 n.6 (Mo. App. W.D. 2018); State v. Feldt, 512 S.W.3d 135, 154–

55 (Mo. App. E.D. 2017).

 When considering the sufficiency of the evidence on appeal,
 this Court must determine whether sufficient evidence permits a
 reasonable juror to find guilt beyond a reasonable doubt. The
 evidence and all reasonable inferences therefrom are viewed in the
 light most favorable to the verdict, disregarding any evidence and
 inferences contrary to the verdict. This is not an assessment of
 whether the Court believes that the evidence at trial established
 guilt beyond a reasonable doubt but rather a question of whether,
 in light of the evidence most favorable to the State, any rational
 fact-finder could have found the essential elements of the crime
 beyond a reasonable doubt.
State v. Stewart, 560 S.W.3d 531, 533 (Mo. 2018); State v. Naylor, 510 S.W.3d 855,

859 (Mo. 2017). “In reviewing the sufficiency of the evidence supporting a criminal

conviction, an appellate court does not act as a super juror with veto powers but

gives great deference to the trier of fact.” State v. Wright, 382 S.W.3d 902, 903 (Mo.

2012 (cleaned up). We “may not supply missing evidence, or give the State the

benefit of unreasonable, speculative, or forced inferences.” State v. Whalen, 49

S.W.3d 181, 184 (Mo. 2001) (cleaned up).
 “A person commits the offense of delivery of a controlled substance if . . . he

. . . [k]nowingly possesses a controlled substance with the intent to distribute or

deliver any amount of a controlled substance . . . .” § 579.020.1(3). Accordingly, to

sustain a conviction for delivery of a controlled substance, the State must prove,

beyond a reasonable doubt, that the defendant had (1) conscious and intentional

possession of a controlled substance, either actually or constructively; (2) awareness

of the presence and illegal nature of the substance; and (3) the intent to deliver the

substance. State v. McCleod, 186 S.W.3d 439, 443-44 (Mo. App. W.D. 2006) (quoting
State v. Sutherland, 11 S.W.3d 628, 631 (Mo. App. E.D. 1999)).

 7
 “In determining whether there is sufficient evidence supporting a conviction

for possession of a controlled substance with intent to distribute, it is the reviewing

court's role to determine whether the quantity possessed, along with all other

circumstances and evidence, supports a reasonable inference from which a jury

could find that the defendant had the intent to distribute the substance.” State v.

Lawson, 232 S.W.3d 702, 706 (Mo. App. W.D. 2007). Although the quantity of

methamphetamine that was in Schurle’s possession is too small, on its own, to

support an inference of his intent to distribute methamphetamine, other

circumstances may support the inference of an intent to distribute, including

possession of unusual amounts of money,2 and possession of paraphernalia

associated with drug dealing, such as a scale.3

 In this case, the evidence was sufficient to support an inference that Schurle

had an intent to distribute methamphetamine. When his vehicle was stopped,

Schurle was visibly nervous, and gave Sergeant Hann a deceptive explanation as to

the nature of his travel. Schurle was in possession of an unusual amount of cash,

and admitted at trial that he lied to Sergeant Hann as to the source of the money.

“‘[G]uilt may be inferred when an accused attempts to deceive the police, as in

making a false exculpatory statement.’” State v. Mueller, 568 S.W.3d 62, 72-73 (Mo.
App. S.D. 2019) (citation omitted). The fact that Schurle lied about the source of the

money – whose possession was not in itself illegal – supported the inference that the

money was derived from illegal activity. Schurle was also in possession of a digital

scale, which Sergeant Hann testified was consistent with drug distribution.

 2 See, e.g., State v. Gonzalez, 108 S.W.3d 209, 210 (Mo. App. S.D. 2003); State v.
Fairow, 991 S.W.2d 712, 714 (Mo. App. E.D. 1999)
 3 State v. Taylor, 373 S.W.3d 513, 525 (Mo. App. E.D. 2012); State v. Lloyd, 205
S.W.3d 893, 909 (Mo. App. S.D. 2006) (inference of intent to distribute marijuana supported
by “the discovery of a scale in Defendant’s residence”); State v. Cortez-Figueroa, 855 S.W.2d
431, 434 (Mo. App. W.D. 1993) (inference that defendant had intent to distribute supported
by possession of large number of baggies, and a scale with residue on it).

 8
Further, a methamphetamine residue was present on the scale, indicating that it

had recently been used to weigh methamphetamine. The scale was deceptively

packaged, to conceal what the object actually was. The jury could also find that

Schurle intentionally locked his keys in his vehicle, and failed to disclose that he

had another key concealed in his clothing, to prevent Sergeant Hann from searching

the vehicle and finding additional evidence of Schurle’s illegal activity.

 Schurle’s real complaint is not that the evidence was insufficient to support

an inference that he had the intent to distribute drugs, but that he was not arrested

while in actual possession of a distributable quantity of methamphetamine. Thus,

Schurle argues that “the question is not whether Mr. Schurle . . . sold

[methamphetamine] in the past. Instead, under Section 579.020(4), the State was

required to prove that Mr. Schurle intended to sell the methamphetamine residue

that he possessed.”

 We recognize that, to support a defendant’s conviction of delivery of a

controlled substance, the State must prove that the defendant possessed a quantity

of a controlled substance with the intent to distribute that quantity. See MAI-

CR4th 425.04.3 (2020) (requiring jury to find that “the defendant knowingly

possessed ([name of controlled substance])” and that the defendant “intended to
(distribute) (deliver) (sell) the ([name of controlled substance])”). It was not

necessary, however, that Schurle actually be “caught in the act” of possessing a

distributable quantity of methamphetamine at the moment of his arrest, or that he

actually be observed in possession of such a quantity. Even if there was no direct

evidence of Schurle’s possession of a distributable quantity of methamphetamine,

the jury could still draw an inference of such possession from the circumstantial

evidence. “‘An “inference” is a conclusion drawn by reason from facts established by

proof; a deduction or conclusion from facts or propositions known to be true.’” State
v. Kinsella, 578 S.W.3d 802, 815 (Mo. App. E.D. 2019) (quoting State v. Waller, 163

 9
S.W.3d 593, 595 (Mo. App. W.D. 2005)). It is well established that “‘[r]easonable

inferences’” supporting a criminal conviction “‘can be drawn from both direct and

circumstantial evidence, and circumstantial evidence alone can be sufficient to

support a conviction.’” State v. Peeler, 603 S.W.3d 917, 920 (Mo. App. E.D. 2020)

(quoting State v. Brown, 360 S.W.3d 919, 922 (Mo. App. W.D. 2012)). “Furthermore,

circumstantial evidence is given the same weight as direct evidence in considering

whether there was sufficient evidence to support a conviction.” State v. Mills, 623

S.W.3d 717, 724 (Mo. App. E.D. 2021) (citing State v. McBenge, 507 S.W.3d 94, 104

(Mo. App. E.D. 2016)).

 In this case, the evidence described above was sufficient for a reasonable

juror to conclude that Schurle had recently been in possession of a quantity of

methamphetamine which he had actually distributed to others. Schurle possessed

an instrumentality of drug distribution (the digital scale), which had a

methamphetamine residue on it. Schurle was also in possession of what the jury

could find were the fruits of drug distribution ($480 in cash, in $20 bills), for which

he offered a false explanation. Schurle was nervous, lied about the reason for his

travel, and attempted to prevent Sergeant Hann from searching his vehicle. All of

this supports the common-sense conclusion that Schurle had recently been selling
methamphetamine. While the quantity of methamphetamine which Schurle

possessed for distribution may be unknowable, the statute specifies that an

individual commits the offense of delivery of a controlled substance if he or she

“[k]nowingly possesses a controlled substance with the intent to distribute or

deliver any amount of a controlled substance.” § 579.020.1(3) (emphasis added).

 To our knowledge, no Missouri appellate court has previously considered

whether a defendant may be convicted of delivery of a controlled substance when

the defendant is not arrested while in actual possession of a distributable quantity
(or is not actually observed delivering the controlled substance to another person).

 10
Courts in other jurisdictions have addressed this question, however, and a majority

of those courts have held that a defendant may be convicted if the evidence supports

the inference that the defendant was recently in possession of a distributable

quantity of a controlled substance, even if the defendant is not caught, or observed,

in actual possession of a distributable quantity. For example, in United States v.

Campbell, 732 F.2d 1017 (1st Cir. 1984), a search of a defendant’s apartment

“discovered various cocaine paraphernalia, including scales, cutting and other

equipment, and approximately 1,000 glassine envelopes, but no cocaine except

measurable residue attached to the equipment.” Id. at 1019. The Court rejected

the defendant’s argument that the evidence was insufficient to support his

conviction of possession of cocaine with intent to distribute. The Court concluded

that the jury could reasonably infer, from the equipment and cocaine residue

discovered in the defendant’s apartment, that he had recently possessed a

distributable quantity of the drug.

 During its deliberation the jury requested instructions, and was
 told that it could convict defendant of intent to sell cocaine other
 than the found residue if it concluded that he had had further
 cocaine for sale within a reasonable time of the date stated in the
 indictment. As to this we find no error. . . . In view of the amount
 of equipment discovered, still with residue present, it would be
 reasonable for the jury to conclude that defendant was conducting
 an ongoing business, and that more substantial amounts of cocaine
 had been present within a reasonable time of the discovery.
Id. at 1020.

 The Court reached the same conclusion in Commonwealth v. LaPerle, 475

N.E.2d 81 (Mass. App. 1985). In LaPerle, like in Campbell, a search of the

defendant’s apartment discovered various paraphernalia associated with cocaine

distribution, but only a residue of cocaine itself. Id. at 82-83. “According to a State

chemist, the amount [of cocaine residue] was visible to the naked eye but probably
was not susceptible to measurement on an instrument less sensitive than an

 11
analytical balance.” Id. at 83. Despite the fact that the defendant was not arrested

in possession of a distributable quantity of cocaine, the Court held that a jury could

reasonably infer that the defendant had been in possession of such a quantity close

to the time of the search:

 In this case we have the existence of a residue of cocaine on
 several items associated with cocaine use or distribution. We have
 the pan of the scale, containing residue, a quantity of cutting
 powder far in excess of the amount, if any, needed to “cut” the
 residue, as well as two packages of wrapping papers. This
 evidence, taken as a whole, permits inferences that a merchantable
 amount of cocaine had previously been present, and that LaPerle
 had intended to distribute it.
Id. at 85; accord State v. Gibson, 52 P.3d 339, 352 (Kan. App. 2002) (although

acknowledging that “the amount of marijuana found at [the defendant’s] apartment

was small,” affirming conviction of possession with intent to distribute where “[t]he

paraphernalia [associated with drug distribution found in the defendant’s

apartment] . . . provided strong circumstantial evidence in support of the State’s

case”); State v. Simpson, 272 S.E.2d 431, 431 & n.2 (S.C. 1980) (affirming conviction

of possession with intent to distribute marijuana, although police recovered only

“3.47 grams of marijuana leaf and seeds” by vacuuming the interior of the

defendant’s airplane, based on the “circumstantial evidence that the plane had been
used in a drug-smuggling operation”).

 The Court of Appeals of Virginia reached a contrary conclusion in Stanley v.

Commonwealth, 407 S.E.2d 13 (Va. App. 1991). In Stanley, officers searched the

defendant’s vehicle when they arrested him. They found “a triple beam balance

scale and a plastic straw, both of which contained cocaine residue,” as well as a

powder used to “cut” or dilute cocaine, “glassine type bags and cut twist ties, caps

from hypodermic needles, an envelope labelled ‘Cocaine Importing Company of

Miami, Florida,’ and account papers and ledgers.” Id. at 14. Despite the presence of
cocaine residue, and a large quantity of drug-distribution paraphernalia, in the

 12
defendant’s vehicle, the Court held that the evidence was insufficient to support the

defendant’s conviction of possession with intent to distribute cocaine:

 Possession with intent to distribute is a crime which requires “an
 act coupled with a specific intent.” We hold that for a defendant to
 be convicted of possession of a controlled substance with the intent
 to distribute, the Commonwealth must prove that the defendant
 possessed the controlled substance contemporaneously with his
 intention to distribute that substance.
 In the case before us, no evidence was presented to support
 an inference that Stanley intended to distribute the residue found
 in his possession. To the contrary, the quantity of residue found in
 [Stanley's] possession was too small to be distributed. Assuming
 that the trier of fact could infer from the evidence introduced at
 trial that Stanley had in the past distributed cocaine, there was no
 basis on which the trier of fact could infer that the residue
 introduced at trial was part of that larger supply. Moreover, no
 evidence was presented as to when or where the supply had been
 either possessed or distributed. Because we find that the
 Commonwealth failed to prove contemporaneous possession and
 intent to distribute, Stanley's conviction must be reversed.
Id. at 15.

 We find Stanley to be unpersuasive. We agree with the Stanley court that, to

sustain a conviction, the State must prove that the defendant possessed a quantity

of a controlled substance with the intent to distribute that quantity. We also agree

that the drug residue found on the paraphernalia in Schurle’s possession could not

itself support his conviction, since that residue was not itself distributable.

Nevertheless, we believe Stanley erroneously discounts the inferences which may

reasonably be drawn from the evidence found in a defendant’s possession at the

time of his arrest. In this case, the evidence discovered at the time of Schurle’s

arrest supported an inference that he had engaged in drug distribution, and that he

had done so recently (given his possession of cash which the jury could infer was

derived from drug dealing, his deceit concerning his travels at 3:00 a.m. on a

 13
Thursday morning, and the presence of a methamphetamine residue on the scale,

suggesting its recent use).

 Schurle cites to United States v. Latham, 874 F.2d 852 (1st Cir. 1989), to

support his argument that the evidence was insufficient to sustain his conviction.

But Latham addressed a different issue. In Latham, the trial court instructed a

jury “that it could find [the defendant] guilty of possession with intent to distribute

cocaine even if the defendant did not intend to distribute the cocaine he in fact

possessed, but if he had the intent to distribute some unspecified amount of cocaine,

that he did not currently possess, at some unspecified time in the future.” Id. at

861. The First Circuit held that this instruction was erroneous. Id. The Court

emphasized that “[t]he statute requires that the government prove that [the

defendant] possessed, actually or constructively, cocaine that he intended to

distribute.” Id. at 862.

 We do not disagree with Latham’s holding. As we have explained above, to

convict Schurle of delivery of methamphetamine the State was required to prove

that Schurle had actually possessed a quantity of methamphetamine with the

intent to distribute those drugs. We reject Schurle’s sufficiency argument because

we are persuaded by the rationale of Campbell and LaPerle: the jury could
reasonably find, based on the circumstantial evidence, that Schurle had previously,

and recently, possessed a distributable quantity of methamphetamine with the

intent to distribute it – even though that quantity was not still in his possession at

the time of his arrest.

 Point I is denied.

 II.

 In Point II, Schurle argues that the circuit court plainly erred by allowing

him to proceed to trial without counsel, where the court failed to comply with
§ 600.051’s requirement of a signed written waiver, and where the court failed to

 14
hold an evidentiary hearing to ensure that Schurle understood the consequences

and perils of self-representation, as required by Faretta v. California, 422 U.S. 806

(1975).

 In its Brief, the State contends that Schurle’s conduct impliedly waived his

right to counsel, and that it was therefore unnecessary for the court to obtain the

written waiver required by § 600.051. See State v. Kunongo, 490 S.W.3d 746, 765-

66 (Mo. App. W.D. 2016) (discussing the exceptions to § 600.051’s written-waiver

requirement); State v. Rawlins, 248 S.W.3d 680, 684 (Mo. App. W.D. 2008) (same).

The State nevertheless concedes that the circuit court plainly erred by permitting

Schurle to proceed pro se without conducting a Faretta hearing. Based on its

confession of error, the State concedes that Schurle’s convictions must be reversed,

and that the case must be remanded to the circuit court for further proceedings.

 The Sixth and Fourteenth Amendments to the United States Constitution

guarantee a criminal defendant the right to counsel in all felony prosecutions.

Gideon v. Wainwright, 372 U.S. 335, 339-42 (1963). This right also “implicitly

embodies a correlative right to dispense with a lawyer’s help” and proceed to trial

pro se. Faretta, 422 U.S. 806, 815 (1975); State v. Ndon, 583 S.W.3d 145, 154 (Mo.

App. W.D. 2019). The Sixth Amendment, however, withholds from courts “the
power and authority to deprive an accused of his life or liberty unless . . . [he

effectively] waives the assistance of counsel.” Johnson v. Zerbst, 304 U.S. 458, 463

(1938) (footnote omitted). “For a waiver of counsel to be effective, due process

requires that the waiver be made knowingly and intelligently.” State v. Hunter, 840

S.W.2d 850, 857 (Mo. 1992); see also Rawlins, 248 S.W.3d at 683 (“[A]bsent a

knowing and intelligent waiver of counsel, no defendant may be imprisoned unless

represented by counsel at trial.” (citation omitted)).

 “There is a strong presumption against the waiver of counsel.” Kunongo, 490
S.W.3d at 762 (citations omitted). Under Faretta, before a circuit court can conclude

 15
that a defendant has effectively waived the right to counsel, the court must conduct

“‘a thorough evidentiary hearing’” which establishes “that ‘the defendant

understands exactly what rights and privileges he is waiving, as well as the dangers

associated with waiving constitutional rights.’” Id. at 763 (quoting State v. Black,

223 S.W.3d 149, 155, 156 (Mo. 2007)).

 Here, the State concedes that Schurle was not given the on-the-record

admonitions required by Faretta. We agree, and conclude that Schurle did not

effectively waive his right to counsel. Although the circuit court conducted two

hearings at which the status of Schurle’s legal representation was explored, and

gave Schurle opportunities to attempt to obtain counsel, the court never expressly

advised Schurle of the risks and responsibilities of proceeding pro se. It was error

for the circuit court to proceed to trial, with Schurle acting pro se, without having

made the inquiries necessary to ensure that Schurle had knowingly and voluntarily

waived his right to counsel. In these circumstances, reversal is required. See, e.g.,

State v. Campanella, 609 S.W.3d 526, 526-27 (Mo. App. S.D. 2020); State v. Grant,

537 S.W.3d 426, 429-30 (Mo. App. S.D. 2018); Rawlins, 248 S.W.3d at 685; State v.

Johnson, 172 S.W.3d 900, 902 (Mo. App. S.D. 2005); State v. Wilkerson, 948 S.W.2d

440, 445-46 (Mo. App. W.D. 1997).4

 4 Because we are reversing for a new trial based on Schurle’s second Point, it is
unnecessary to address his third Point, which challenges the circuit court’s conclusion that
Schurle was not eligible for representation by the Public Defender because he was able-
bodied and capable of obtaining employment. We note that Schurle has been represented
by the Public Defender on appeal, and it is unclear whether issues concerning his indigency
will recur on remand. We remind the circuit court, however, that a determination of
indigency must be based on “the means at [the defendant’s] disposal or available to him to
obtain counsel.” § 600.086.1. If the defendant’s financial circumstances later change, a
further determination of indigency may be made “at any stage of the proceedings.”
§ 600.086.3. The relevant statutes also provide that, if a defendant “becomes financially
able to meet all or some part of the cost of services rendered to him,” “at any time, either
during or after the disposition of his case,” the defendant may at that time be required to
reimburse the Public Defender for the costs of his representation “in such amounts as he
can reasonably pay.” § 600.090.1(2).

 16
 Conclusion
 We reject Schurle’s argument that the evidence at trial was insufficient to

support his conviction for delivery of methamphetamine. We conclude, however,

that Schurle is entitled to a new trial because the circuit court failed to conduct a

hearing to ensure that Schurle was knowingly and voluntarily waiving his right to

counsel, before conducting a trial at which Schurle was unrepresented. We

accordingly reverse the circuit court’s judgment, and remand for further

proceedings consistent with this opinion.

 Alok Ahuja, Judge
All concur.

 17